173 F.3d 104
 254 Copr.L.Dec. P 27,892
 Christopher SELLETTI, Plaintiff-Appellant,
v.
Mariah CAREY, Sony Music Entertainment, Inc., Sony Songs,
Inc., Avenue Records, and Broadcast Music, Inc.,
Defendants-Appellees,
Sylvester Stewart, a/k/a Sly Stone, Steve Toppley, Ruby
Jones, Wallyworld Music, Rye Songs, WB Music Corp., Columbia
Records, Even Street Productions, Ltd., Jerry Goldstein,
individually and as President of Even Street Productions,
Ltd., and American Society of Composers, Authors and
Publishers, Inc., Defendants.
 Docket Nos. 98-7449, 98-7920.
 United States Court of Appeals,
Second Circuit.
 Argued March 17, 1999.
Decided April 14, 1999.
 
 Jeffrey Levitt, Amityville, NY, for Plaintiff-Appellant.
 Orin S. Snyder, Parcher, Hayes & Snyder, New York, N.Y. (Jill Israeloff Gross, of counsel) for Defendants-Appellees Mariah Carey, Sony Music Entertainment, Inc., and Sony Songs, Inc.
 Mark C. Shames, Sbeglia & Shames, New York, NY, for Defendant-Appellee Avenue Records.
 Judith Saffer, New York, NY, for Defendant-Appellee Broadcast Music, Inc.
 Before: WALKER and CABRANES, Circuit Judges, and TSOUCALAS,* Judge, Court of Int'l Trade.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Plaintiff appeals from orders of the United States District Court for the Southern District of New York (Denny Chin, Judge ) imposing sanctions and requiring security for costs, dismissing the action for failure to comply with that order, and denying motions for relief from the dismissal. See Selletti v. Carey, 173 F.R.D. 96 (S.D.N.Y.1997); Selletti v. Carey, 174 F.R.D. 311 (S.D.N.Y.1997); Selletti v. Carey, 177 F.R.D. 189 (S.D.N.Y.1998). We conclude that the imposition of sanctions and a security requirement was within the district court's discretion, but that the court abused its discretion by dismissing the action without giving weight to plaintiff's asserted inability to comply with those orders. Accordingly, although we recognize the extraordinary effort that the district court already has devoted to this case, we vacate the order of dismissal and remand to the district court for further proceedings.
 
 I. BACKGROUND
 
 2
 This action is based upon plaintiff Christopher Selletti's alleged authorship of the lyrics to defendant Mariah Carey's hit song titled "Hero." The complaint, filed in early 1996, asserts claims against Carey and various other defendants in the recording industry for violations of the Copyright Act, 17 U.S.C. § 101 et seq., and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
 
 
 3
 On May 21, 1997, the district court ordered plaintiff to pay, within seven days, a $5,000 sanction for discovery abuses, and to post, by June 16, 1997, a $50,000 bond as security for defendants' costs and attorney's fees, which are potentially recoverable under the Copyright Act.[1] See Selletti, 173 F.R.D. at 104. The court based its order on a finding that "Selletti ha[d] failed from the beginning to diligently prosecute this case." Id. at 98. In particular, plaintiff had failed to comply with the court's discovery schedule, pursuant to which his responses to interrogatories and document requests were due on October 21, 1996, and he had violated a specific order of the court, issued on December 13, 1996, to serve those responses by January 10, 1997. See id. at 99. Although plaintiff's then-counsel, Thomas Liotti, claimed to have "miscalendared" the due date, he was aware of his noncompliance by January 16 but did not communicate with the court or provide any discovery responses until the time of a conference held on January 30. See id.
 
 
 4
 The court also noted that during this period of delay, plaintiff had invited a newspaper reporter to a pre-trial conference, had appeared on an NBC television show to discuss this case, and had provided the show with a page of handwritten notes purporting to reflect his composition of the song. See id. at 99-100. Although those notes were within the scope of defendants' earlier document requests, they were not provided to defendants until April 1997. See id. at 100. Finally, the court found that "there is a serious risk that Selletti will be unable to pay the reasonable costs to which defendants may be entitled should they prevail," and that "the merits of Selletti's case are indeed questionable." Id. at 101, 102. "[T]aken together," the court concluded, "these circumstances suggest that Selletti's lawsuit is little more than a strike suit brought against potentially deep-pocket defendants." Id. at 102.
 
 
 5
 Plaintiff filed a notice of appeal (docket no. 97-7680); the appeal was subsequently dismissed by the Clerk of this Court due to plaintiff's failure to file a pre-argument statement, order a transcript, or pay the docketing fee within ten days after filing the notice of appeal. See Rules of the United States Court of Appeals for the Second Circuit, App. Part C, Civil Appeals Management Plan pp 3, 6(a).
 
 
 6
 In June 1997, after the deadlines for payment of sanctions and posting of the bond had passed, the district court received a letter from Ross M. Gadye--who would ultimately become plaintiff's second attorney--requesting a stay for the purpose, inter alia, of substituting himself as counsel. See Selletti, 174 F.R.D. at 312. Both four days before and four days after this letter was written, however, then-counsel-of-record Liotti wrote to the court without any mention of Gadye or the substitution. See id.
 
 
 7
 On June 26, 1997, the district court dismissed the complaint with prejudice due to plaintiff's failure to post the bond or pay the sanction ordered on May 21. In its order of dismissal, the court noted that plaintiff had requested a hearing concerning his professed inability to comply with those requirements, but the court stated that such a hearing was unnecessary. The court explained: "Even assuming that he cannot afford to pay the required amounts, my May 21, 1997 Decision and Order requiring a bond and imposing a sanction stands." However, the court did note that if plaintiff informed it within three business days that he was willing to promptly post a bond and pay the sanction, the court would consider vacating the dismissal.
 
 
 8
 Three weeks later, Attorney Gadye--who purported to represent plaintiff despite having failed to effect a substitution as counsel, see Rule 1.4 of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules")[2]--informed the district court that plaintiff "will pay the discovery sanction," and requested a lowering of the required bond and vacatur of the dismissal. Plaintiff never did pay the sanction. In any event, the district court treated the letter as a motion for relief pursuant to Fed.R.Civ.P. 60(b),[3] and, on July 25, denied the request. See 174 F.R.D. at 313. The court held that even if Gadye were authorized to file such a motion on plaintiff's behalf, it would be denied on the merits. See id. Specifically, the court rejected plaintiff's only new argument, that Attorney Liotti was responsible for the abuses on which dismissal was predicated. The court explained:
 
 
 9
 There is nothing in the record to suggest that Liotti did not conduct this litigation--including the lack of diligent prosecution and various violations of my orders--in exactly the manner desired by Selletti, and with his full complicity. In fact, plaintiff's efforts to publicize his case, including his broadcasting of documents and information while not providing those same items to defendants in discovery, appear to have been the joint efforts of Selletti and Liotti. Even if Liotti's alleged malfeasance or nonfeasance took place without Selletti's consent, however, Selletti is bound by the acts of his lawyer.
 
 
 10
 Id. at 314. The court then reviewed the grounds for its earlier order of dismissal and reaffirmed that decision. See id. at 315-16.
 
 
 11
 Nearly four months later, on November 19, 1997, after Gadye was substituted as counsel, plaintiff filed a formal Rule 60(b) motion, again based upon the alleged deficiencies of Attorney Liotti. See Selletti, 177 F.R.D. at 191. At a scheduling conference on this motion, the district court instructed plaintiff to submit a copy of the lyrics that he had allegedly authored. See id. at 189. Because these lyrics were virtually identical to those of Carey's song, the district court ordered an evidentiary hearing. See id. at 189-90. Plaintiff testified at the hearing, which was held on December 18, 1997, and defendants submitted (1) two tape recordings of Carey and a co-author purportedly working on the song, (2) a "writing book" allegedly kept by Carey while writing "Hero" and other songs, and (3) a videotape of the movie "Hero," which--according to defendants--was originally planned to include the Carey song, but which ultimately did not do so. See id. at 190.
 
 
 12
 Before the district court ruled on plaintiff's pending Rule 60(b) motion, plaintiff submitted an affidavit, this time disparaging the performance of his second counsel, Attorney Gadye. Although an accompanying memorandum of law purports to have been submitted by plaintiff pro se, the record strongly suggests that it was prepared by yet a third attorney, Jeffrey Levitt, who subsequently was substituted as counsel and who continues to represent plaintiff in this appeal.
 
 
 13
 By memorandum decision dated January 20, 1998, the district court denied plaintiff's Rule 60(b) motion. The court found that the time for appeal of the order of dismissal had expired, and that the Rule 60(b) motion was an improper attempt to circumvent those limits. See 177 F.R.D. at 192. In any event, the court concluded that the motion would be denied even if its merits were reached, because the earlier decision had been reinforced by plaintiff's pattern of blaming his attorneys for the problems with his case, by the prejudice to defendants that would result from reinstatement of the case after additional delay, and by the conclusion that plaintiff's case had no merit whatsoever. See id. at 192-93. Specifically, the district court found that plaintiff's testimony at the evidentiary hearing was "patently unbelievable," that defendants' evidence supported Carey's authorship of the song, and that plaintiff's version of events was internally inconsistent in many respects. See id. at 194-95.
 
 
 14
 On February 18, 1998, plaintiff filed a notice of appeal (docket no. 98-7449) encompassing the May 21, 1997 imposition of sanctions and the security requirement, the June 26, 1997 order of dismissal, and the January 20, 1998 denial of the Rule 60(b) motion.
 
 
 15
 More than four months later, plaintiff filed in the district court a motion, pursuant to Fed.R.Civ.P. 59(a)[4] and 60(b), for reopening of, amendment of, or relief from the prior judgment. The basis for the motion was plaintiff's "discovery" that the movie "Hero" had been released to the public in October 1992, which fact allegedly conflicted with defendants' earlier representations that Carey had composed the song in or around November 1992. The district court properly assumed that it had jurisdiction to deny the motion during the pendency of an appeal. See Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir.1992) (per curiam) (during pendency of appeal district court may entertain and deny Rule 60(b) motion, but if district court is inclined to grant the motion, remand from court of appeals must be obtained). The district court did deny the motion, on June 25, 1998, because it was "too late," and because review of the purported "newly discovered evidence" revealed "no basis for reargument or reconsideration." Plaintiff appeals separately from that denial (docket no. 98-7920).
 
 II. DISCUSSION
 A. Jurisdiction
 
 16
 A threshold question is whether we have jurisdiction over the orders of May 21, 1997 (imposing sanctions and requiring security for costs) and June 26, 1997 (dismissing the complaint), in light of the fact that plaintiff did not file a notice of appeal until February 18, 1998. See Cohen v. Empire Blue Cross & Blue Shield, 142 F.3d 116, 118 (2d Cir.1998) (per curiam) ("The requirement of a timely filing of a notice of appeal is mandatory and jurisdictional.") (internal quotation marks omitted). The order of dismissal, which unequivocally stated that the "complaint is dismissed in its entirety with prejudice," was a final order.[5] Nevertheless, plaintiff argues that the time for appeal never began to run, because a separate "judgment" has not been entered on the docket.
 
 
 17
 Under the Federal Rules of Appellate Procedure, any notice of appeal in a civil case must be filed "within 30 days after the judgment or order appealed from is entered." Fed. R.App. P. 4(a)(1)(A). However, every judgment is required to be "set forth on a separate document," Fed.R.Civ.P. 58,[6] and to avoid confusion, we have adhered to the rule that "the time for appeal does not start running until this separate document is entered." Cooper v. Town of East Hampton, 83 F.3d 31, 33 (2d Cir.1996) (internal quotation marks omitted). Moreover, we have held that the words "or order" in Rule 4(a)(1) "were not ... intended to indicate that a separate 'order' ... should be viewed as a 'judgment' satisfying the separate document requirement." Kanematsu-Gosho, Ltd. v. M/T Messiniaki Aigli, 805 F.2d 47, 49 (2d Cir.1986); accord Cooper, 83 F.3d at 34. Therefore, the appeal period had not yet begun when plaintiff filed his notice of appeal.
 
 
 18
 Finally, we note that appellate jurisdiction exists despite the fact that a separate judgment still has not been entered. Where an order appealed from clearly represents a final decision and the appellees do not object to the taking of an appeal, the separate document rule is deemed to have been waived and the assumption of appellate jurisdiction is proper. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 387-88, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); Leonhard v. United States, 633 F.2d 599, 611-12 (2d Cir.1980); see also Baker v. Mercedes Benz of N. Am., 114 F.3d 57, 60 (5th Cir.1997). Accordingly, we have jurisdiction over the appeal of the May 21 and June 26, 1997 orders.
 
 B. Merits of the Appeal
 
 19
 We review for abuse of discretion the district court's decisions to impose sanctions for failure to obey its discovery orders, see Fonar Corp. v. Magnetic Resonance Plus, Inc., 128 F.3d 99, 101 (2d Cir.1997) (per curiam), to require a bond or other security for costs, see Haberman v. Tobin, 626 F.2d 1101, 1104 (2d Cir.1980), and to dismiss for failure to pay the sanctions or post the required security, see id. at 1104-05; Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995).
 
 
 20
 1. The May 21, 1997 Order Imposing Sanctions and a Bond Requirement
 
 
 21
 Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party disobeys a discovery order, the court may make "such orders ... as are just," including, for example, an order prohibiting that party from introducing designated matters into evidence. The rule also provides:
 
 
 22
 In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
 
 
 23
 Fed.R.Civ.P. 37(b)(2). "The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust." Id. advisory committee note (1970 amendment).
 
 
 24
 We need not decide whether, as plaintiff contends, a district court abuses its discretion by requiring a party, instead of his attorney, to pay sanctions based on a single, minor infraction attributable entirely to the attorney's negligence. Those circumstances simply are not presented here. As discussed above, the district court in this case identified a series of discovery abuses and a general strategy, pursued by both plaintiff and his attorney, to prosecute this action through the media rather than comply with the discovery requirements of the Federal Rules and the orders of the court. Under these circumstances, the imposition of a $5,000 sanction was not an abuse of discretion.
 
 
 25
 Similarly, the district court did not abuse its discretion by requiring plaintiff to file a security for costs and attorney's fees, which may be awarded to the prevailing party in a copyright action. See 17 U.S.C. § 505.[7] Such orders are specifically authorized, under the appropriate circumstances, by Local Civil Rule 54.2.[8] See Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251-52 (2d Cir.1987) (discussing former Local Civil Rule 39, which in April 1997 was renumbered as Local Civil Rule 54.2). As discussed above, the district court found in this case that the merits of plaintiff's claims were questionable, that plaintiff had violated discovery orders and otherwise had failed to prosecute his claims adequately, and that defendants' ultimate ability to recover costs that might be awarded by the court was in doubt. Under these circumstances, imposition of a $50,000 bond requirement was well within the district court's discretion.[9] See id.
 
 
 26
 Accordingly, we affirm the district court's order of May 21, 1997.
 
 2. The June 26, 1997 Order of Dismissal
 
 27
 Rule 41(b) of the Federal Rules of Civil Procedure authorizes dismissal of an action when a plaintiff fails to comply with "any order of court," and, more specifically, Local Civil Rule 54.2 authorizes dismissal for failure to comply with an order requiring security for costs. We have previously held that the propriety of a Rule 41(b) dismissal generally depends on a balancing of five factors:
 
 
 28
 (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.
 
 
 29
 Lucas v. Miles, 84 F.3d 532, 535 (2d Cir.1996). Although the district court was not required to discuss these factors on the record, see id., it did so at the time of its first refusal to grant relief from the dismissal. See 174 F.R.D. at 315-16.
 
 
 30
 While it is clear that most of the relevant considerations weigh heavily in favor of dismissal, we nevertheless conclude that the district court abused its discretion by failing to accord any significant weight to plaintiff's inability to pay the sanction or post security in the required amount, a consideration relevant to plaintiff's interest in receiving a fair chance to be heard.[10] See, e.g., English v. Cowell, 969 F.2d 465, 473 (7th Cir.1992) ("If the plaintiffs were truly unable to pay the sanctions, they may have had a valid excuse for their noncompliance.... Without a more developed record on whether [plaintiffs] were unable to pay, we cannot determine conclusively whether the district court abused its discretion in dismissing these claims for failure to comply with the sanctions orders."); Hornbuckle v. Arco Oil & Gas Co., 732 F.2d 1233, 1237 (5th Cir.1984) (finding of fact as to ability to pay sanctions is "essential" for appellate consideration of whether dismissal for failure to pay sanctions was abuse of discretion); see also Aggarwal v. Ponce School of Medicine, 745 F.2d 723, 728 (1st Cir.1984) (in decision to dismiss due to plaintiff's failure to comply with security requirement, "a plaintiff's ability to post surety for costs must weigh in the balance").
 
 
 31
 The district court appeared to assume that, because a bond requirement is designed to insure payment of costs that may be awarded to the opposing party, a plaintiff's inability to provide such insurance warrants dismissal. We disagree. In our view, the primary purpose of the bond requirement is to insure that whatever assets a party does possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded.[11] Although serious problems may be posed by the growing number of non-meritorious suits brought by plaintiffs hoping for quick settlements from deep-pocketed defendants, and although the deterrent created by cost and fee-shifting provisions such as 17 U.S.C. § 505 is diluted by the inability of a plaintiff to pay, the imposition of a security requirement may not be used as a means to dismiss suits of questionable merit filed by plaintiffs with few resources. Some time ago, explaining our reversal of an order of dismissal that gave insufficient consideration to a party's inability to file a bond, we stated: "Truly were this order to stand it would go far in making the federal court a court only for rich litigants...." Farmer v. Arabian Am. Oil Co., 285 F.2d 720, 722 (2d Cir.1960).
 
 
 32
 Accordingly, in affirming a dismissal or a stay for failure to post bond, we have often emphasized the absence of a showing of inability to pay. See Atlanta Shipping, 818 F.2d at 252 ("In setting the $10,000 bond requirement, [the district court] specifically noted that the amount of the bond should not 'seriously impede' Atlanta's ability to prosecute the action."), aff'g, 631 F.Supp. 335, 353 (S.D.N.Y.1986) (noting that creditor had agreed to finance costs of bankrupt plaintiff's litigations); Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir.1965) ("The amount of security required is relatively modest and Leighton has failed to show that he would be financially unable to post the required amount. The security requirement and stay thus represent reasonable measures designed to further the effective administration of this suit and do not unduly prejudice Leighton in the pursuit of his claim."). It follows that a party's inability to pay must weigh heavily against a dismissal for failure to do so.[12]
 
 
 33
 We recognize that during the twelve months following its order of dismissal, the district court was extraordinarily tolerant of plaintiff's various efforts to obtain relief from that order. In particular, the court accommodated plaintiff's changes of attorneys (and periods of overlapping representation), gave extensive consideration to three separate requests by plaintiff for relief, and held an evidentiary hearing on the merits of plaintiff's claims. Furthermore, we note that the absence of a separate judgment has further delayed the ultimate resolution of this case, which has seen little progress of any substance in the more than three years since it was filed. Nevertheless, the order of dismissal itself was, by its terms, predicated on plaintiff's failure to pay sanctions and file security for costs. And, because the district court abused its discretion by giving inadequate consideration to plaintiff's alleged inability to pay, we are constrained to vacate the dismissal and remand the case for further proceedings.
 
 
 34
 On remand, the district court may consider whether dismissal is appropriate based on a finding that plaintiff was in fact able to pay the sanctions or post the required bond; based on plaintiff's overall conduct apart from his non-compliance with those requirements; or based on a conclusion that the evidence already received by the district court demonstrates defendants' entitlement to summary judgment, see Fed.R.Civ.P. 56. Because it is not clear on this record whether the district court previously viewed any of these grounds as a sufficient justification for dismissal, we will not rely on these considerations in order to affirm the district court's order of dismissal; of course, we express no opinion with respect to the propriety of a dismissal on any of these grounds.
 
 III.
 
 35
 To summarize: For the reasons stated above,
 
 
 36
 (1) In docket no. 98-7449, we
 
 
 37
 (a) affirm the district court's May 21, 1997 order requiring plaintiff to pay sanctions and file a bond or other security for costs;
 
 
 38
 (b) vacate the district court's June 26, 1997 order of dismissal;
 
 
 39
 (c) dismiss as moot so much of the appeal as relates to the January 20, 1998 order denying the motion for relief; and
 
 
 40
 (d) remand the case for further proceedings consistent with this opinion.
 
 
 41
 (2) In docket no. 98-7920, we dismiss as moot the appeal of the district court's June 25, 1998 order denying plaintiff's further motion for relief.
 
 
 
 *
 The Honorable Nicholas Tsoucalas, of the United States Court of International Trade, sitting by designation
 
 
 [1]
 The May 21, 1997 order also required plaintiff to produce documents. Because plaintiff does not challenge that portion of the order on appeal, we do not discuss it here
 
 
 [2]
 The rule provides:
 An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.
 Local Civil Rule 1.4.
 
 
 [3]
 The rule provides in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.
 Fed.R.Civ.P. 60(b).
 
 
 [4]
 The rule provides in pertinent part:
 A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
 Fed.R.Civ.P. 59(a).
 
 
 [5]
 Because the district court's order imposing sanctions and a security requirement was not "final," we consider that order together with the order of dismissal. See Allied Air Freight, Inc. v. Pan Am. World Airways, Inc., 393 F.2d 441, 444 (2d Cir.1968) ("Since all interlocutory orders and decrees are merged into the final order of the district court, they may be reviewed on the appeal.") (citations omitted); Koppers Co. v. Aetna Cas. & Sur. Co., 158 F.3d 170, 173 n. 2 (3d Cir.1998) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order.")
 
 
 [6]
 The rule provides in pertinent part:
 Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).
 Fed.R.Civ.P. 58.
 
 
 [7]
 The statute provides:
 In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.
 17 U.S.C. § 505.
 
 
 [8]
 The rule provides:
 The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to non-compliance as are just, and among others the following: an order ... dismissing the action....
 Local Civil Rule 54.2.
 
 
 [9]
 Although we hold below that the district court abused its discretion by dismissing the complaint without giving adequate consideration to plaintiff's asserted inability to pay, we do not hold that the court abused its discretion when it set the amount of the sanction and the security requirement at $5,000 and $50,000, respectively. At that time, plaintiff did not make a clear argument that these amounts would effectively preclude compliance. Furthermore, if a court sets an amount that proves to exceed the party's ability to pay, the court retains the option of accepting partial or periodic payment, or rescinding the obligation altogether, rather than dismissing the suit
 
 
 [10]
 We note that plaintiff has not actually demonstrated an inability to pay. In its order of dismissal, however, the district court refused plaintiff's request for a hearing on the subject, because the court was willing to "assum[e] that he cannot afford to pay the required amounts." For the purposes of this appeal, therefore, we are constrained to rely upon the same assumption
 
 
 [11]
 For that reason, as the district court well observed, a significant consideration in the decision whether to impose a security requirement is whether the party in question "is a non-resident or foreign corporation." Selletti, 173 F.R.D. at 100-01
 
 
 [12]
 We acknowledge the potential distinction between dismissal for failure to post a bond and dismissal for failure to pay a sanction, which more directly reflects misconduct by the party involved. Such misconduct itself might warrant dismissal if a plaintiff's financial circumstances eliminate the effectiveness of sanctions as a remedy or as a deterrent. See Herring v. City of Whitehall, 804 F.2d 464, 468 (8th Cir.1986) ("If the party is not capable of [paying discovery sanctions], the district court should then consider other sanctions. The ultimate sanction of dismissal with prejudice should only be used when lesser sanctions prove futile."). Nevertheless, where dismissal is predicated on the non-payment itself, as opposed to the underlying misconduct, the degree of that misconduct does not alter our analysis with respect to the significance of a party's inability to pay. See id. (holding that district court abused its discretion by dismissing for non-payment without inquiring into party's asserted inability to pay)