George **MANNING**, Plaintiff–Appellant,

v.

**NEW YORK UNIVERSITY,**
Defendant–Appellee.

**Docket No. 01–9073.**

United States Court of Appeals,
Second Circuit.

Argued: June 17, 2002.

Decided: July 26, 2002.

---

Pablo Quiñones (Dona S. Kahn, of counsel), Anderson Kill & Olick, New York, NY, for Defendant–Appellee.

Before: CALABRESI, SACK, and B.D. PARKER, Circuit Judges.

PER CURIAM:

Plaintiff George Manning appeals *pro se* from a memorandum and order of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) denying his Fed. R.Civ.P. 60(b) motion to vacate a settlement agreement reached with the defendant New York University ("NYU") on January 30, 2001. *Manning v. N.Y. Univ.*, No. 98 Civ. 3300, 2001 WL 963982, 2001 U.S. Dist. LEXIS 12697 (S.D.N.Y. Aug.22, 2001). Initially, Manning argued to the district court and on appeal, *inter alia*, that his Rule 60(b) motion should have been granted because the agreement failed to meet certain requirements of the Older Workers Benefit Protection Act, 29 U.S.C. § 621 *et seq.*, ("OWBPA" or "the Act"). Appellant's Br. at 4–14. In a May 1, 2002 letter to us, however, Manning withdrew his appeal insofar as it sought to vacate the January 30 agreement as invalid. He also sought interest on the amount of his settlement. Appellant's Motion to Withdraw Appeal at 1–2. During argument before us, he reaffirmed that he no longer asserted that the settlement agreement was invalid. He thus withdrew his argument concerning the OWBPA, as well as the remaining arguments in his brief to us about the invalidity of the settlement agreement. *See* Appellant's Br. at 4–14, 16–19. What remains is Manning's contention that the settlement terms to which he agreed were later improperly supplemented by the district court with new terms to which he did not agree and his

George Manning, Ridgewood, NY, pro se.

request for interest. *Id.* at 14–15; Appellant's Reply Br. at 9–12.

We conclude that the April 4, 2001 written settlement agreement, endorsed by the district court in its August 22, 2001 order, did not modify the framework settlement agreement arrived at on the record by Manning and NYU on January 30. The alleged alterations that Manning now protests would be, in any case, permissible clarifications of that January 30, 2001 settlement.

## BACKGROUND

### The Litigation and Settlement

On May 8, 1998, Manning, represented by counsel, filed a complaint in the United States District Court for the Southern District of New York alleging that his employer, NYU, had discharged him in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and various state statutes. On September 1, 2000, the district court (Naomi Reice Buchwald, *Judge*) endorsed a report and recommendations prepared by Magistrate Judge Henry B. Pittman, and issued an order granting in part a motion for summary judgment made by NYU. In a subsequent conference on September 21, 2000, the district court discussed separately with each side its settlement position. The court, in a later memorandum and order, observed that during these discussions, Manning "communicated that he would accept a package consisting of tuition remission for his stepdaughter, reinstatement, 'retiree' classification, and a large lump sum payment, in exchange for a release and confidentiality agreement." *Manning*, 2001 WL 963982, at *8, 2001 U.S. Dist. LEXIS 12697, at *26–*27. NYU, in contrast, offered to settle Manning's claims for "tuition remission for Mr. Man-

ning's stepdaughter, a change in Mr. Manning's discharge status to 'retiree,' and a payment of up to $100,000 in return for a general release and a confidentiality provision covering Mr. Manning's tenure at NYU...." *Id.* at *8, 2001 U.S. Dist. LEXIS 12697, at *27. At the end of these negotiations, the district court later noted in its memorandum and order, "[t]he only term in true dispute was the dollar figure." *Id.* Nevertheless, as a result of the parties' subsequent inability to agree on the dollar amount that NYU would pay Manning in the settlement, the district court scheduled a trial to commence on January 29, 2001.

The district court empaneled a jury, and heard opening arguments and Manning's testimony on January 29, 2001. That evening, however, the spouse of one of NYU's counsel unexpectedly passed away. The following day, with the parties' consent, the district court declared a mistrial. While obtaining the parties' consent to a new trial before Magistrate Judge Pittman, the district court also urged fresh settlement negotiations, offering to serve again as an intermediary in such discussions. The parties accepted the court's offer and engaged in negotiations that day in Judge Buchwald's chambers. Judge Buchwald later observed that during these discussions, "Mr. Manning negotiated vigorously and down to the last detail." *Id.* at *2, 2001 U.S. Dist LEXIS 12697, at *6. For instance, he narrowed the confidentiality clause to include only "his termination from NYU and lawsuit," and arranged for his counsel to accept fee reductions and for payment to be made to him and to counsel by separate checks in order to minimize his tax exposure. *Id.* at *2, 2001 U.S. Dist LEXIS 12697, at *6–*7. At the close of the apparently successful negotiations, the district court explained the agreed-upon terms to Manning. NYU's counsel also

transcribed a summary of the settlement terms, which Manning reviewed with his lawyers. The district court then summoned a court reporter and placed the settlement on the record. The agreed upon terms were stated by NYU's lawyer on the record as follows:

First, ... the plaintiff's step-daughter, finish [sic] her bachelor degree from NYU without paying for tuition. Second, George Manning will be considered on the record as a retiree from NYU. Third, the plaintiff George Manning will not publish anything pertaining to this lawsuit or the underlying events of his separation from employment from NYU. Fourth, the terms of this agreement shall be confidential. Fifth, NYU will pay to George Manning the sum of $199,000 in separate checks.

Settlement Conf. Tr. at 3. The district court then asked Manning whether these terms "accurately reflect[ed] the terms that were agreed to previously," and Manning assented. *Id.* Finally, the district court noted that "there [would] be a written agreement of settlement that [would] be entered into by the parties consistent with the summary terms that [had] been listed [on the record] and obviously releases will also be exchanged and the case will be discontinued." *Id.* at 3–4. The following day, the district court clerk entered an order "discontinu[ing]" the case without prejudice to restoring it to the court's calendar upon application of either party within thirty days. The lawyers for both parties continued negotiations, arriving at a written draft settlement agreement on or about February 20, 2001.

On or about March 2, 2001, the plaintiff, through new counsel, Gerard McCabe, telecopied a letter to the district court ask-ing to withdraw from the settlement because he had been subject to "pressure from his legal counsel and from the Court." Letter from Gerard McCabe to Judge Buchwald dated February 28, 2001,[1] at 1. According to the letter, Manning's wife had been "brought into chambers and broke down in tears with threats that her [sic] and her husband would lose everything if he refused to settle." *Id.* Manning allegedly acquiesced, his new counsel insisted, only "to end his wife's anguish." *Id.*

In response to counsel's letter, the district court held a telephone conference with NYU's counsel and both of Manning's lawyers on March 8. The court informed the parties that it "never intended to issue a dismissal without prejudice," and "explained to plaintiff's new counsel that no coercion occurred at any time." *Manning,* 2001 WL 963982, at *3, 2001 U.S. Dist. LEXIS 12697, at *9. The district court apparently had no further contact with McCabe following March 8. The court then issued an order correcting its January 31, 2001 order to note that the dismissal had been "with prejudice." *Id.*

Notwithstanding the plaintiff's effort to withdraw from the settlement, Manning's first lawyer, Antonia Kousoulas, continued to quibble with NYU over the settlement's precise wording. On March 27, 2001, Kousoulas contacted the district court, seeking a ruling on the validity of a written settlement agreement that Manning refused to sign on the grounds that:

(1) he only agreed to release his employment claims, not to a general release, (2) he never consented not to apply for reinstatement, (3) he did not agree to waive his right to sue if he

---

**1.** Manning contends that his new counsel telecopied the letter rejecting the settlement on February 28, 2001. Counsel submitted an affidavit, however, which stated that he had sent the letter "on either February 28, 2001 itself or on March 1, 2001."

applied for reinstatement and was denied, and (4) he never agreed that he would not participate in other lawsuits against NYU.

*Id.* at *3, 2001 U.S. Dist. LEXIS 12697, at *10. Apparently without consulting Kousoulas, Manning telephoned the district court on April 2 to declare his wish to make a Rule 60(b) motion. In another conference call with both litigants' lawyers on April 4, 2001, the district court observed that in its view there was "no doubt" both that Manning had initially agreed to a general release and that his " 'retiree' status" implied that he would not apply anew to NYU.[2] *Id.* at *4, 2001 U.S. Dist. LEXIS 12697, at *10. The court nevertheless persuaded NYU to withdraw its demand that Manning not participate in new lawsuits against it. That same day, NYU tendered to Manning a fresh draft of the settlement agreement reflecting these changes.

On April 24, yet another lawyer hired by Manning (his third) sent a letter to the district court "rais[ing] for the first time the issue of whether the settlement violated the OWBPA." *Id.* at *4, 2001 U.S. Dist. LEXIS 12697, at *11.

*District Court Ruling on Plaintiff's Rule 60(b) Motion*

On May 21, 2001, Manning, still represented by his third counsel, made a motion pursuant to Fed.R.Civ.P. 60(b) to vacate the settlement agreement and judgment so as to restore the action to the trial calendar. On August 22, 2001, the district court denied the motion. The court recited the procedural history of the case, *id.* at *1–*4, 2001 U.S. Dist. LEXIS 12697, at *1–*11. It held that even assuming *arguendo* that the OWBPA applied, Manning's waiver

was valid. *Id.* at *5–*10, 2001 U.S. Dist. LEXIS 12697, at *13–*33. The district court further held that, notwithstanding this conclusion, the Act did not as a matter of law apply to "on the record" settlements. *Id.* at *11–*16, 2001 U.S. Dist. LEXIS 12697, at *33–*51. The court reasoned that the OWBPA, through incorporation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, included exceptions for settlements negotiated under the auspices of either a court or the Secretary of Labor. *See id.* at *11–*14, 2001 U.S. Dist. LEXIS 12697, at *33–*43. Therefore, the court concluded that the OWBPA did not displace traditional agency and court "authority to supervise ... waivers" in ADEA cases such as the case at bar. *Id.* at *14, 2001 U.S. Dist. LEXIS 12697, at *44.

In reaching these conclusions, the district court made several factual findings relevant to this appeal. First, the court observed that "[t]here can be no doubt but that Mr. Manning understood the [January 30] agreement's terms perfectly well," in part because he negotiated them "for hours." *Id.* at *5–*6, 2001 U.S. Dist. LEXIS 12697, at *16–*17. Second, the district court found that even in the September 21, 2000 conference, NYU had "adamantly refused to accept anything short of a general release," and that "[n]othing other than a general release was ever discussed thereafter." *Id.* at *7, 2001 U.S. Dist. LEXIS 12697, at *20. Third, the district court rejected the plaintiff's assertion of coercion. Manning "faced no time pressure in making his decision [and] ... did not request more time to consider the offer." *Id.* at *9, 2001 U.S. Dist. LEXIS 12697, at *28–*29. Prior to the January

---

**2.** Manning suggests that he had discharged Kousoulas when the court treated her as representing him in the April 4, 2000 conference call. Since he has given up any arguments that would stem from the lack of representation in the April 4 conference call, we need not, and therefore do not, express any opinion on that question.

30, 2001 settlement conference, moreover, he "had known all of the key settlement terms, save the dollar figure, for over five months and had vigorously bargained for the monetary settlement to which he finally agreed." *Id.* at *9, 2001 U.S. Dist. LEXIS 12697, at *29.

Finally, the district court expressed the "gravest reservations about the affidavit Mr. Manning submitted" claiming coercion. *Id.* at *9, 2001 U.S. Dist. LEXIS 12697, at *30. This "highly ill-advised" submission, *id.* at *10, 2001 U.S. Dist. LEXIS 12697, at *32, the district court stated, "differ[ed] substantially" from the truth, *id.* at *10, 2001 U.S. Dist. LEXIS 12697, at *30. In particular, the district court rejected Manning's characterization of his wife's behavior during the January 30 settlement conference:

> Mrs. Manning . . . appeared relaxed and comfortable. Indeed, when Mr. Manning and his counsel left the room to consult privately for a few minutes, Mrs. Manning chose to remain and we engaged in social conversation with her about the experience of having children in college and the challenges of early career choices. Mrs. Manning appeared at all times calm, amiable and sociable. Certainly, there was not the slightest hint that she was "emotionally upset," let alone so upset that Mr. Manning should have been "fearful for her mental and physical condition."

*Id.* at *10, 2001 U.S. Dist. LEXIS 12697, at *31.[3] The district court thought that Manning, who demonstrated evident satis-faction with the settlement agreement, did not resemble "a man coerced." *Id.* at *10, 2001 U.S. Dist. LEXIS 12697, at *32.

The court therefore rejected the Rule 60(b) motion and ordered Manning to "sign the version of the settlement agreement agreed upon by counsel and the Court during the April 4, 2001 conference call." *Id.* at *16, 2001 U.S. Dist. LEXIS 12697, at *51–*52.

On September 18, 2001, Manning appealed the district court's August 21, 2001 order denying his Rule 60(b) motion.[4]

## DISCUSSION

We note initially that the question on appeal is narrow: Manning now contends only that he "did not agree to never seek employment at NYU" or "not to sue NYU for past acts" unrelated to his employment claims. Appellant's Reply Br. at 9. In a May 30, 2002 filing to clarify his appeal, Manning stated that he was "not questioning the validity of the in-court agreement—[his] appeal to vacate the settlement [was] withdrawn."[5] Appellant's Reply Letter of May 30, 2002, at 4. He thus no longer proffers his argument based on the OWBPA, which, if successful, would result in a vacatur of the settlement agreement and the restoration of his case to the trial calendar, a result he seeks to avoid on appeal. Nor does he contend, as he did in his initial brief to us, that he in fact withdrew from the settlement or that he lacked sufficient opportu-

---

**3.** Counsel for NYU gave similar testimony.

**4.** Manning originally appealed the January 30, 2001 order dismissing the case on April 10, 2001. The record shows, however, that Manning withdrew this appeal on August 2, 2001. Consequently, only the appeal from the district court's disposal of the Rule 60(b) motion is before us now.

**5.** On May 1, 2002, Manning had filed with this Court a "Motion to Withdraw Appeal." He requested therein that we nevertheless "review and rule on [the] District Court's ruling [about the] Defendant's adding of new terms to what was agreed to in court [in the settlement agreement]."

nity for contemplation before entering into the agreement. Appellant's Br. at 14–15, 17–18.

## I. Standard of Review

 We review a district court's dismissal of a Rule 60(b) motion for abuse of discretion. *Lawrence v. Wink,* 293 F.3d 615, 622–23 (2d Cir.2002). We " 'review a district court's finding[s] regarding the meaning of ambiguous terms [in a settlement] for clear error.' " *County of Suffolk v. Alcorn,* 266 F.3d 131, 137 (2d Cir.2001) (quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 174 (2d Cir.2001)). Rule 60(b) provides that the district court may relieve a party or a party's legal representative from a final judgment, order, or proceeding in five enumerated circumstances and, according to the sixth subpart, for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6).[6] Because none of the first five reasons applies to Manning's arguments, we address only whether the district court abused its discretion in concluding that there was no "other reason justifying relief from the operation of the judgment." *Id.; see Branum v. Clark,* 927 F.2d 698, 704 (2d Cir. 1991) (noting that an "appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment").

## II. The Alleged Additional Terms

 Manning contests two provisions of the April 4, 2001 settlement agreement draft. First, he asserts that he should not be barred by the agreement from "at any time in the future institut[ing] any litigation against [NYU] concerning any matter arising prior to the date of this Agreement, including, but not limited to, any matter concerning Plaintiff's former employment with Defendant or his separation therefrom." Settlement Agreement ¶ 7. Manning thus contends that he never agreed and was therefore not bound under the settlement agreement to execute and deliver a general release to NYU. Second, Manning asserts that although the January 30 agreement stated that he would "be considered on the record as a retiree from NYU," Settlement Conf. Tr. at 3, it did not bar him from "seek[ing] future employment with Defendant," Settlement Agreement ¶ 3, as the April 4 settlement agreement would. We disagree on both counts.

First, the district court, in its August 22, 2001 memorandum and order, made factual findings that Manning in fact understood both terms he now argues were not part of the settlement reached on January 30, 2001. The district court stated that "the basic terms of the settlement were discussed in great detail at the September 21, 2000 settlement conference." *Manning,* 2001 WL 963982, at *8, 2001 U.S. Dist. LEXIS 12697, at *26. Therefore, even prior to the January 30, 2001 settlement conference, Manning knew "*all*" of the key settlement terms, save the dollar figure." *Id.* at *9, 2001 U.S. Dist. LEXIS 12697, at *29 (emphasis added). Even though, during the April 4, 2001 conference call, the district court chose to make clear that "Manning's 'retiree' status implied that he would not re-apply for his job," *id.* at *4, 2001 U.S. Dist. LEXIS 12697, at *10, nothing in the record suggests that Manning in fact had been previously unaware of the implications of this status. Further, Manning's insistence that

---

**6.** Rule 60 states that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b).

he did not understand that the settlement required him to give NYU a general release is belied by the fact that NYU declined as early as September 2000 to accept "anything short of a general release." *Id.* at *7, 2001 U.S. Dist. LEXIS 12697, at *20. Indeed, when the district court "communicated defendant's final settlement offer, the one Mr. Manning accepted [during the January 30, 2001 negotiation session], it stated *explicitly* that the offer was for a general release of all claims against NYU that arose prior to the date of settlement." *Id.* (emphasis added). Thus, the district court found that both of the conditions that Manning now contests, like all the other terms in the final written version of the settlement, were known to the plaintiff well before January 30, 2001. *See id.* at *6–*7, 2001 U.S. Dist. LEXIS 12697, at *16–*21.

Manning did not explain to the district court in filings in support of his Rule 60(b) motion—or to us—why these findings of fact are wrong or why a decision based on them would be an abuse of discretion. The only evidence he submitted was his own affidavit and that of his wife, who also testified that she had been "very uncomfortable" and "upset" at the settlement conference. L. Manning Aff. at 1. Nothing in either Manning's or his wife's affidavits tends to establish that any of the April 4, 2001 draft settlement's terms were novel or had not been discussed either on or before the January 30, 2001 negotiations. ▮ Even if the terms Manning now disputes had been unclear on January 30, 2001, the district court nonetheless retained authority to clarify subsequently the settlement and to impose clarifying terms. On January 30, 2001, the settlement's basic terms were read into the record. The district court's subsequent order noted that the "case ha[d] been settled on the record," and therefore ordered

it discontinued. The district court subsequently clarified that this order was a dismissal with prejudice. Through these orders, the district court entered, in effect, a "settlement judgment," in which "the parties ... agreed [through settlement negotiations] on the components of a judgment, including the basic aspects of relief, but ... not ... on all the details or the wording of the judgment." *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir.1986). Although "[t]he components of the agreement are usually reported to the court on the record," a district court nonetheless "is obliged to determine the detailed terms of the relief and the wording of the judgment." *Id.; cf. Huertas v. E. River Hous. Corp.*, 813 F.2d 580, 582 (2d Cir. 1987) (describing the distinguishing characteristics of a settlement agreement, *inter alia*, that it "was reported in the record in open court," after which "the district court interrogated the parties under oath to confirm their understanding and acceptance of the ... settlement; ... the parties had agreed to all principal terms ...; and, the district judge ... awaited the submission of a proposed judgment"). Hence, in contrast to a consent judgment, in which "all of the relief to be provided by the judgment and all of the wording to effectuate that relief is agreed to by the parties," *Janus Films*, 801 F.2d at 582, a settlement judgment allows the district court to retain authority to "implement[] but not expand[] upon the parties' settlement agreement," *id.* at 583; *cf. Huertas*, 813 F.2d at 582 (holding that a district court could not *sua sponte* add a new term allocating attorneys' fees in an existing settlement judgment).

In the case at hand, the district court's final judgment endorsed the settlement agreement reached on the record on January 30, 2001, not the comprehensive specification of settlement terms negotiat-

ed between February and April 2001. In endorsing "a written agreement of settlement ... consistent with the summary terms [entered into on January 30]," Settlement Conf. Tr. at 3, the district court thus was exercising its residual authority to direct the final form of relief.

█ The interpretations of the release and retiree provisions of the January 30 agreement would fall unequivocally within the district court's authority to implement the framework settlement agreement it endorsed in its January 30, 2001 and March 12, 2001 orders. "It is peculiarly within the province of the district court to determine the meaning of its own order." *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (quoting *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir.1995) (per curiam)) (internal punctuation and quotation marks omitted); *see also Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000) (noting that a district court's "clearest obligation is a duty to enforce the stipulation [in a settlement] that it has approved"); *cf. In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 687 F.2d 626, 629 (2d Cir.1982) ("It is beyond a district court's discretion to alter the terms of or to refuse to enforce a settlement agreement[ ], absent special circumstances, such as a material breach of the agreement."). Even assuming *arguendo* that the terms Manning contests had not been articulated until after January 30, 2001, we find no clear error in the district court's interpretation of the January 30, 2001 settlement agreement. And in light of the detailed preceding negotiations, we agree with the district court, and conclude that the district court did not abuse its discretion in holding that these terms implemented the understandings previously reached in the course of negotiations prior to January 30.

In sum, the terms that Manning insists were improperly added to the settlement agreement by the district court had been explained to and endorsed by him as part of the settlement negotiation process prior to January 30, 2001. And even had this not been so, the district court had ample authority to clarify ambiguities in the description of the settlement reached on January 30 by crafting the terms at issue. In contrast, a "[p]laintiff's change of mind does not excuse her [or him] from performance of her [or his] obligations under the settlement agreement." *Evans v. Waldorf–Astoria Corp.*, 827 F.Supp. 911, 914 (E.D.N.Y.1993).

### III. Applicability of OWBPA

In light of Manning's withdrawal of his arguments questioning the validity of the settlement agreement as a whole, we leave for another day the question whether the OWBPA, 29 U.S.C. § 626(f)(2), applies to settlement negotiations such as those that transpired in Judge Buchwald's chambers on January 30, 2001, and, if it does apply, whether such a settlement agreement would be valid under the Act.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed. We remand to the district court for such further proceedings as may be required, including a determination of whether any award of interest should be made.