14-3551-cv
*Pullman v. Alpha Media, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of September, two thousand fifteen.

PRESENT:   ROBERT D. SACK,
           DENNY CHIN,
           CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JACLINN PULLMAN,

                    *Plaintiff-Appellant*,

                    v.                                        14-3551-cv

ALPHA MEDIA PUBLISHING, INC., FKA DENNIS PUBLISHING, INC., QUADRANGLE GROUP, LLC, STEPHEN COLVIN, DOES 1-20, ALPHA MEDIA GROUP, INC.,

                    *Defendants-Appellees*,

PETER EZERSKY,

                    *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:        JACLINN PULLMAN, *pro se*, Tenafly, New Jersey.

FOR DEFENDANTS-APPELLEES:        CHARLES J. KEELEY, James F. Rittinger, Justin Klein, , Satterlee Stephens Burke & Burke LLP, New York, New York, PATRICK D. BONNER JR., John R. Menz, Joshua S. Hackman, Menz Bonner Komar & Koenigsberg LLP, New York, New York, JOSHUA H. EPSTEIN, Sara Hausner-Levine, Davis & Gilbert LLP, New York, New York.

Appeal from orders of the United States District Court for the Southern District of New York (Crotty, *J.*, and Netburn, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED**.

Appellant Jaclinn Pullman, proceeding *pro se*, appeals from certain orders of the district court, including its orders entered March 28, 2013, November 6, 2013, September 10, 2014, and September 23, 2014.[1] In particular, Pullman alleges that the district court erred or abused its discretion in (1) dismissing her claim against defendant-appellee Stephen Colvin in his individual capacity under the New Jersey Consumer Fraud Act (the "CFA"), and denying her motions for leave to amend and for

---

[1]    Pullman filed her notice of appeal on September 24, 2014. The district court did not enter a final judgment in the case, but the September 10, 2014 order was in essence the "final" order of dismissal, as it directed the Clerk of the Court to close the case and defendants-appellees have not objected to the taking of this appeal. *See Selletti v. Carey*, 173 F.3d 104, 109-10 (2d Cir. 1999). We consider the district court's earlier orders, including the March 28, 2013 and November 6, 2013 orders, which were not "final," as merged into the final order of dismissal. *See id.* at 109 & n.5 (citing *Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir. 1968)).

reconsideration in this respect, (2) enforcing an oral settlement agreement between Pullman and the corporate defendants, and (3) sealing the transcript of a settlement conference and the settlement amount. Pullman also moves before this Court to strike a portion of one of the defendant-appellee's briefs, and for this Court to take judicial notice of new evidence and of the magistrate judge's ruling in another case.

The suit arises from Pullman's claim that the defendants deceived her into investing in the Maxim Bungalows timeshare in the Dominican Republic, by misrepresenting that Maxim owned the timeshare when in fact it had merely licensed its trademark to the developer. Had she known of Maxim's limited involvement, Pullman alleges, she would not have invested in the timeshare, which was purported to be a Ponzi scheme. Colvin was formerly an officer of defendant-appellee Alpha Media Group, Inc.

We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

## 1.     The CFA Claim Against Colvin

We review *de novo* both the dismissal for failure to state a claim and the denial of leave to amend as futile. *See Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011). We review the denial of reconsideration for abuse of discretion. *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011).

The complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a CFA claim, a plaintiff must allege: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).  Corporate officers can be "individually liable pursuant to the CFA for their affirmative acts of misrepresentation to a consumer." *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 131 (2011); *see, e.g.*, *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 587-88 (D.N.J. 2014) (finding that plaintiff had sufficiently pleaded individual liability under CFA where complaint alleged that defendant "himself made a material misrepresentation" to plaintiff).  However, "the factual circumstances that would support such relief have been limited." *Green v. Morgan Props.*, 215 N.J. 431, 457 (2013).

Upon review, we conclude that the district court correctly ruled that Pullman's complaint failed to state a CFA claim against Colvin, and that leave to amend would have been futile.  We affirm for substantially the reasons set forth by the district court in its March 28, 2013 order, adopting the magistrate judge's report and recommendation.  Moreover, the denial of Pullman's motion for reconsideration and

leave to amend, in light of the allegations raised in the motion, was not erroneous. None of the new evidence on which Pullman relies cures the defects in her complaint.

Pullman does not allege that Colvin made any statements to her directly, misleading or otherwise. Instead, she relies on Colvin's involvement in, among other things, designing and appearing in some of the marketing materials for the timeshare. She contends that Colvin claimed in promotional appearances to be "very excited to be in partnership with [the timeshare developer] to develop the Maxim Bungalows," Docket No. 80 at 7, and that this 'partnership' implied ownership of the Bungalows. But Colvin's reference to the partnership, and his statements in marketing materials, could just as naturally refer to what was in fact the licensing agreement between Alpha Media Publishing, Inc. and the timeshare developer.

Pullman fails to connect Colvin to any of the marketing materials that did arguably misrepresent the ownership of Maxim Bungalows in violation of the CFA. Moreover, she does not allege that she relied on any of Colvin's statements or materials, or that Pullman knew of Colvin's statements prior to her purchase of the timeshare. Thus a "causal relationship" is not plausibly alleged. *Bosland*, 197 N.J. at 557. Nor does Pullman plausibly allege that Colvin directed others to violate the CFA.

## 2.    The Settlement

On appeal, Pullman argues for the first time that the September 10, 2013 oral settlement agreement is not binding. We do not ordinarily consider claims raised

for the first time on appeal, *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006), and there is no reason to do so in this case. In the district court, Pullman took the opposite position by moving to enforce the oral agreement, and she acknowledges she could have contested the enforceability of the oral settlement in her objections to the magistrate judge's recommendation to grant, in part, that motion. Because Pullman had "every incentive and opportunity" to challenge the oral settlement in the district court proceedings, we decline to address this argument. *Bogle-Assegai*, 470 F.3d at 506.[2]

As to the arguments Pullman did raise in the district court, we review for clear error a district court's findings as to the meaning of ambiguous settlement terms. *Manning v. New York Univ.*, 299 F.3d 156, 162 (2d Cir. 2002) (per curiam). The district court "ha[s] ample authority to clarify ambiguities in the description of the settlement reached [on the record] by crafting the terms at issue." *Id.* at 164. Our review of the record and relevant case law reveals no errors in the district court's ruling as to the scope of the release and the meaning of ambiguous and unspecified terms. The principal issue is whether the phrase "mutual release of all parties and all employees and agents, et cetera" set forth on the record at the settlement conference included Colvin. The district court concluded that the parties clearly intended to release former employees, including Colvin, in their official (but not individual) capacities. We affirm

---

[2]     While Pullman argued in her appellate brief that the oral settlement agreement was not binding, she clarified during oral argument that she was not challenging the enforceability of the oral agreement but rather sought to have it enforced as stated on the record.

for substantially the reasons stated by the district court in adopting the magistrate judge's report and recommendation.

**3.      The Court's Sealing Order and Pullman's Motions**

The district court sealed the transcript of an October 2013 settlement conference as well as the settlement amount, referenced in a September 2013 settlement conference, although it acknowledged that the settlement amount had been publicly disclosed when a third party posted the September 2013 transcript on a website.  We review the sealing decision for abuse of discretion, but because the sealing of documents implicates First Amendment concerns, it warrants "close appellate scrutiny." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013).

Though there is a common law presumptive right of access to judicial documents, *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014), a court considers the weight to be given to this presumption in light of "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).  In deciding whether to seal a judicial document, we have held that "access to settlement discussions and documents has no value to those monitoring the exercise of Article III judicial power by the federal courts." *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998).  The "presumption of access to settlement negotiations . . . is negligible to nonexistent." *Id.* at 858.

The district court did not abuse its discretion in sealing the October 2013 settlement conference transcript. The court did not rely on that transcript in deciding subsequent motions to enforce the settlement agreement. It therefore played no role in the court's exercise of judicial power, and there is less of a public interest in access to the document.

The district court also did not abuse its discretion in redacting the settlement amount, as referenced in the transcript of the September 2013 settlement conference. *See id.* at 857-58. As part of her argument for the unsealing of the settlement amount, Pullman contends that the amount is already in the public domain. She points to *Gambale v. Deutsche Bank AG*, where we held that after a confidential settlement amount was made public, it could no longer be made private again. 377 F.3d 133, 144 (2d Cir. 2004). In *Gambale*, though, the defendants appealed from the district court's un-sealing of previously sealed documents that contained settlement terms. It was the district court that publicly disclosed the magnitude of the settlement, referring to it in its unsealing order. That unsealing order was accessible on Westlaw and Lexis, and was "disseminated prominently" in a New York Times article -- this Court had no means "to put the genie back [in the bottle]." *Id.* Here, Pullman appeals from the district court's sealing -- rather than un-sealing -- order, which redacted the settlement amount soon after the September 2013 transcript became available. It was a third party who posted the unredacted transcript, and it was a limited disclosure on an online

message forum rather than a court order available on "highly accessible databases," *id.,* and in the national media.

In support of her challenge to the sealing of the settlement amount, as referenced in the September 2013 conference transcript, Pullman moves before this Court for the Court to take judicial notice of evidence that was not presented to the trial court -- the number of times the September 2013 transcript has allegedly been viewed online by members of the public. However, we limit our review to the record on appeal. *See Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002); *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975) (per curiam) ("[A]bsent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record."). Her motion to take judicial notice of this new evidence is therefore denied, as is her request that we strike a portion of an appellee's brief and her request that we take judicial notice of a recent magistrate judge decision.

We have considered all of Pullman's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court and **DENY** Pullman's motions.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk