**STERLING PROMOTIONAL CORP., Plaintiff,**

v.

**GENERAL ACCIDENT INSURANCE COMPANY OF NEW YORK, n/k/a CGU Insurance, Travelers Property Casualty; SGS Testing Company, Inc., Defendants.**

No. 00 Civ. 6345(RO).

United States District Court, S.D. New York.

Jan. 15, 2003.

Benjamin J. Golub, Rogovin Golub Bernstein & Wexler LLP, New York City, for Plaintiff.

James W. Carbin, Duane Morris LLP, New York City, for Travelers Property Casualty.

Patrick W. Brophy, McMahon, Martine & Gallagher, New York City, for Defendant SGS Testing Company, Inc.

*OPINION & ORDER*

OWEN, District Judge.

■ Before me is defendant Travelers Property Casualty Company's motion to dismiss plaintiff Sterling Promotional Corporation's complaint and for attorneys' fees pursuant to Fed. R. Civ. Proc. 37(b), asserting that Sterling president, Steven Linder, who is basically the main and probably the only possible witness from plaintiff Sterling,[1] has for two years repeatedly and deliberately evaded any effective discovery sought by defendant Travelers.[2] In an October 3, 2002 conference call, two years after the deposition of the plaintiff was noticed and ten months after the Court's intervention was first, and thereafter repeatedly, sought, I told counsel that "[t]here has been, in my opinion, a very devious, continuous effort [by plaintiff Sterling] to avoid coming to these depositions, and that has frustrated the defendant's ability to defend here." The motion was thereupon orally granted but under the law governing the granting of this extreme remedy, a necessarily detail-laden statement of facts is required to set forth the grounds.

Sterling, plaintiff here, is the defendant in an action in New York State Supreme Court, Westchester. In that action, plaintiff Corporate Visions alleges that Sterling did not pay for a shipment of toy teddy bears shipped by boat from China. Sterling contends that the product suffered water damage in transit. That action was twice removed by Sterling to Federal Court, first to the Eastern District of New York, which was, however, summarily sent back, the Eastern District declining to transfer it to this Court.[3] Sterling nevertheless made a second removal to this, the Southern District, which came to me and was

---

1. Linder, in an affidavit, has called himself Sterling's "one man show".

2. Defendant SGS has joined in Travelers' motion. SGS will be discussed infra at pp. 12–13.

3. *Corporate Visions, Inc. v. Sterling Promotional Corp.*, 2000 WL 33217350, No. 00–cv–4663 FB (E.D.N.Y. August 16, 2000).

also remanded.[4] In this action, filed in this court on a questionable diversity theory[5] on August 24, 2000. Sterling seeks a declaratory judgment that its Travelers insurance policy covers the damaged teddy bears in the event that Sterling, in the *Corporate Visions* action, is determined to be the owner of the bears—that is, that title had passed to it.

Starting two years ago, on September 29, 2000, Travelers' attorney, James W. Carbin, served a notice of deposition of Sterling. For more than a year, Sterling's counsel failed to schedule the deposition. Fourteen months later, on November 28, 2001, Travelers' attorney wrote to the Court requesting assistance. A conference call was held on December 7, 2001. During that call, Sterling's lawyer's explanation for not complying—for 14 months—was that since the Court had been considering whether to remand to state court the second *Corporate Visions* action removal, see supra, he "didn't proceed forward with any discovery [in this case] based upon the fact that we didn't know whether or not the [other] case was going to remain in the Southern District."[6] I forthwith ordered a deposition to be held by January 30, 2002.

Unfortunately—but of little relevance here—the evening before the Sterling employee's deposition, January 30, 2002, Travelers' attorney realized and notified Sterling's lawyer that due to a scheduling conflict he had just become aware of, he would be unable to proceed with deposing her the next day. Travelers' attorney did, however, thereafter make numerous repeated requests to reschedule, both by phone and letters to Sterling's lawyer, but his requests went unanswered. Sterling's lawyer finally reported on April 10, 2002 that it was Steven Linder, Sterling's President and sole shareholder, who would be the deposition witness, but his travel schedule made it impossible for him to be deposed before mid-May 2002.

Finally, on May 15, 2002, almost 18 months after Travelers first served its deposition notice, Linder appeared for a deposition that commenced at 11:30 a.m. but shortly before 1:00 p.m., Sterling's lawyer out-of-the-blue stated that Linder had a doctor's appointment and terminated the deposition.

The transcript reads:

> MR. GOLUB: Gentlemen, unfortunately, as I said before, Mr. Linder has a medical, not really emergency, but he has to see the doctor, he's got a doctor appointment at one o'clock.[7]
>
> MR. CARBIN: I'm sorry to hear that. I am a bit concerned because we've been looking at this deposition for some time.
> * * *
> MR. CARBIN: We were scheduled to start at 11.15 at plaintiff's request. You're right, we did start a few minutes late.
>
> MR. GOLUB: At 11:30.
>
> MR. CARBIN: Now shortly before one o'clock, we're told we have to reconvene and adjourn.
>
> Q. When did this medical condition arise.?
> * * *
> MR. GOLUB: Objection. Don't answer any of those questions. You're not entitled to that.
>
> I'm telling you he has a medical condition. I'm not going to let you permit that.
>
> It's beyond the scope.

4. *Corporate Visions, Inc. v. Sterling Promotional Corp.*, 2001 WL 461006, No. 00 civ 6748 RO (S.D.N.Y. May 2, 2001).

5. In the complaint filed here on August 24, 2000, Sterling alleged diversity jurisdiction. In a phone conference on December 7, 2001, the Court stated, "Mr. Golub, you brought the case here initially yourself and having a belief that this court did have [diversity] jurisdiction which I take it you will now have to in effect renounce in some fashion?" to which he replied, "Yeah."

6. The Court notes that the case had been remanded seven months earlier.

7. [Footnote by the Court] Linder, over the summer of 2002, asserted a foot problem as the reason for canceling the day before a later scheduled July 26, 2002 deposition. See Dr. Hoorfar's letter of August 1, 2002, infra, but in a subsequent affidavit of October 2, 2002, Linder erroneously cites the Hoorfar letter as support for the earlier May 15 deposition termination quoted above.

MR. CARBIN: I have a problem

MR. GOLUB: There's nothing we can. What time is it now?

It's five of one. We have to reconvene. I'm sorry.

MR. CARBIN: I certainly sympathize with a medical condition, but I object to the fact that the deposition is being terminated, that we've waited so long for and we had to start late because of plaintiff's request and here we are less than two hours into it and we're told that for some unknown reason, aside from a general medical condition, it's got to be continued.

MR. GOLUB: Well, just let me say—

MR. CARBIN: Let's fix the date right now.

MR. GOLUB: I can't. It's impossible for me. I don't even have my calendar with me. I just walked over from my office ... I'll call Mr. Carbin later today with some additional dates.

There is no record of Golub making any promised call thereafter, and given this, a month later, on June 19, 2002, Travelers moved to dismiss the complaint or, alternatively, compel Linder to appear for his deposition. This did cause Sterling to agree to produce Linder on July 26, 2002, the motion to dismiss being held in abeyance. However, the day before *that* scheduled deposition, Sterling canceled it altogether, one Dr. J.E. Hoorfar later writing in an August 1, 2002 letter[8] addressed "To Whom it May Concern":

Mr. Steve Linder contact [sic] me on the morning of Thursday, July 25, 2002 describing severely painful digit on the right foot which had been throbbing with redness and swelling present for the past few days. He was unable to wear shoes and was not able to come into the office immediately due to his pain. He was told that he probably had a reoccurrence of the infected ingrown nail or gouty attack. Therefore he was advised to soak the foot and elevate to allow the pain to subside.

Accordingly, Travelers, while by letter to the Court, it pressed its motion to dismiss, it did agree to reschedule Linder's deposition yet again on September 5, 2002. On August 16, Sterling's lawyer, Golub wrote Carbin that Linder would be available for two days, *all day* on September 5th and *up to 1:30 the next day,* September 6th, which Carbin confirmed by his letter:

This will confirm the deposition of Mr. Linder at our New York office commencing at 10:30 a.m. on Thursday, September 5, 2002. Mr. Linder should be prepared to remain the entire day *with a reasonable break for lunch.* If this is not possible, kindly advise promptly so that alternate arrangements can be made. Please note we will not withdraw our pending motion concerning the issue of Mr. Linder's examination until the deposition has been concluded. (emphasis supplied).

Golub forwarded Carbin's above letter to the Court, not only as confirmation of the deposition, but that there would be a "reasonable lunch break".

The September 5 deposition began at 10:30 a.m. However, at 12:15, when Carbin asked to take a one half hour lunch break, Golub refused. When Carbin remained adamant about this short lunch break, stating, "It's 12:15, I'll see you at a quarter to 1." Golub replied, "We're not coming back. You can take it up with the judge."

That very afternoon, September 5, *Golub* wrote Carbin stating, "Since you were unwilling to complete Mr. Linder's deposition today, please let me know what dates you will be available for the completion (finally) of Mr. Linder's deposition." Notwithstanding this bizarre misstatement, Carbin did not immediately follow Golub's advice to "take it up with the judge." Instead, Carbin wrote to Golub on September 9, attempting yet again to set a date. When Golub failed to reply to Carbin's letter, Carbin did "take it up with the judge," advising the Court by letter dated September 20 that Sterling had terminated the September 5 deposition, and asking that Travelers's motion to dismiss be considered.

8. See fn. 7, *supra.*

On September 27, in a conference call with counsel and a reporter, the Court ordered Linder's deposition to continue on October 9, 2002. Soon thereafter, Golub notified the Court that Linder would be out of town on October 9. Accordingly, another conference call was held on October 1 and the deposition was rescheduled for October 3 or October 4, two days for which Linder had *not* indicated he would be out of town. Golub, however, advising the Court of several conflicts of his own on Friday, October 4, the Court directed that "absent some statement to me *tomorrow* [October 2] for why not, I'm going to make it for Thursday [October 3]." (emphasis supplied). A start time of 10:00 a.m. was fixed, but when Golub said he was having construction workers come to his apartment that morning, the start time was made 10:30.

The Court heard nothing from Golub on October 2. It later turned out he had spent the entire day working with Linder preparing papers and faxed them to chambers at 5:20 p.m., after we had left for the day, the fax not being discovered until the next morning, October 3, when Golub called chambers at 9:30 a.m. to state that neither he nor Linder would be appearing that day. The said fax consisted solely of Linder's affidavit, dated October 2. Therein, Linder explained that although he would be in New York on October 3, he would not be available for a deposition because he had two work-related meetings already scheduled. Obviously, no application had been made at all to the Court to avoid appearing for the deposition that the Court had ordered with some vehemence.

While in the earlier October 1 conference call, the Court had suggested that the deposition might go forward on October 4, with someone from Golub's office sitting in in Golub's place, Linder now stated in his affidavit that he was unavailable on October 4 as well because he was going to Canada for business meetings that day. He further stated that he would be leaving directly for Chicago from Canada. Less than a week earlier, however, Linder had provided me with his travel itinerary, which indicated only a trip to Chicago on October 6 and a trip to Hong Kong on October 11. There was no suggestion of a trip to Canada on October 4.

It appears that suddenly, the plans had changed so that he was leaving from Canada. As an exhibit to his affidavit, Linder attached a copy of his plane ticket to Montreal. Notably, the face of the ticket showed that it was purchased on October 1. Thus, the very day the Court informed Linder's counsel that Linder would be required to appear on October 3 or October 4, Linder was procuring his absence from New York on October 4.

Linder having failed to honor the Court's order and appear for the October 3 deposition, there was another conference call with counsel and a reporter that afternoon. During that call, Golub revealed that he knew as early as 10:30 or 11:00 on the morning of the prior day, October 2, that Linder would not be appearing. He did not ask the Court for relief from its order, nor did the Court, as described above, learn of this until the next morning, the day of the deposition, October 3. He did not inform Carbin until 4:45 p.m. the prior evening, October 2, by which time Carbin had engaged a court reporter who gave up another engagement on October 3. Golub's explanation for this was that he did not believe the Court was inclined to grant further adjournments and therefore spent all day drafting Linder's affidavit, rather than taking five minutes to alert the Court and his adversary that Linder would not be appearing. Golub, however, was unable to reconcile that statement with the Court's clear statement during the October 1 conference call that "absent some statement to me *tomorrow* [October 2] for why not, I am going to [schedule the deposition] for Thursday." See supra, (emphasis supplied).

Finally, the Court notes that in the October 3 conference call, Golub confirmed that Linder was on notice of the consequences of his failure to appear, stating that "I explained all of that to him." Golub also acknowledged that Linder's Canada trip on October 4 was "a very recent change of plans."

Turning to the applicable law, there are at least three independent bases authorizing a dismissal of an action: Fed. R. Civ. Proc. 37 ("Rule 37"). Fed. R. Civ. Proc. 41(b) ("Rule 41(b)") and the Court's "inherent power" to control proceedings.

Rule 37(b) governs the Court's authority to sanction those who fail to comply with discovery orders. Specifically, Rule 37(b)(2) states:

the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

* * *

(C) An order ... dismissing the action ...

Fed. R. Civ. Proc. 37(b)(2)(C). In addition, Rule 37(d) governs the failure of a party to attend its own deposition and states: "the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." Fed. R. Civ. Proc. 37(d). The plain language of these provisions makes it clear that the Court is empowered to dismiss this action due to Linder's several failures to appear for the deposition and his willful flouting of court orders.

This conclusion is wholly consistent with Second Circuit authority. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir.2002); *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759 (2d Cir. 1990). In the more than two years since Travelers first served its deposition request on Sterling to the last aborted effort in October 2002, there have been more than five applications and motion-revivals seeking dismissal and even more conferences, achieving no more than three failures to appear unilaterally, dishonoring Court orders, and two sessions shortly aborted, at the end of the second Golub stating, "we're not coming back. You can take it up with the judge." (p. 6 supra). This is an extreme situation, meriting the harsh remedy of dismissal.

Dismissal is also warranted under Rule 41(b), which states that "[f]or failure of the plaintiff to prosecute *or to comply with these rules or any order of the court*, a defendant may move for dismissal of an action or of any claim against the defendant." Fed. R. Civ. Proc. 41(b) (emphasis supplied). *See, e.g., Selletti v. Carey*, 173 F.3d 104, 111 (2d Cir. 1999).

Plaintiff was clearly on notice that failure to comply with the court-ordered deposition would result in dismissal. Linder's own affidavit of October 2, 2002 at ¶ 26 makes this abundantly clear. Further, the Second Circuit has recognized that "[p]arties and counsel have no absolute right 'to be warned that they disobey court orders at their peril.'" *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253 (2d Cir.1999) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir.1991)).

Linder and Sterling's ongoing efforts to avoid a deposition have prejudiced Travelers's ability to defend against Sterling's claim. It has been two years since Travelers first sought to depose Sterling. In that time, one minor employee has already left Sterling. As time continues to pass—and Sterling has demonstrated that it will seize every opportunity to make more time pass—Travelers risks becoming less and less able to uncover facts necessary to defend itself in this action.

Finally, the Court has considered other alternatives to dismissal, including contempt citations. However, Sterling's ongoing intransigence and cavalier attitude toward the facts[9] lead me to conclude that Linder has no intention of subjecting himself to a meaningful attendance at a deposition. Thus, dismissal is the sole appropriate remedy here.[10] Accordingly, Travelers's motion to dismiss is granted.

■ Travelers has also moved for an award of attorneys' fees in the amount of $2,550, which it represents is a conservative estimate of the fees incurred in dealing with Sterling's above conduct. It arrives at this figure by multiplying Carbin's hourly rate of

---

**9.** I note the "facts" asserted in the early removal efforts before Judge Block and then me, see pp. 2–3, supra, and further note the comparison of Golub writing Carbin, "Since you were unwilling to complete Mr. Linder's deposition today ..." with the transcript of its termination where Golub stated: "We're not coming back. You can take it up with the judge."

**10.** I note that nowhere does Golub make any suggestion that Travelers, notwithstanding its persistent efforts, obtained any truly meaningful input from the two brief aborted times it did get to question Linder.

**470**

$255 with a "conservative" estimate of ten hours spent responding to Sterling's discovery conduct. This is reasonable. Rule 37(b)(2) states:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, . . .

See also *Residential Funding Corp. v. De-George Financial Corp.*, 306 F.3d 99 (2d Cir.2002). Rule 37 allows that award to be assessed against Sterling, Golub, or both.

■ Even in the absence of Rule 37, the Court is empowered to award attorneys fees to Travelers in accordance with its inherent power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27:

> a court may assess attorney's fees when a party has acted in bad faith, vexatiously, or for oppressive reasons. In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting or by hampering enforcement of a court order.

It is clear and the Court finds that Sterling has acted in bad faith and vexatiously with regard to not appearing at Court-ordered depositions or appearing briefly twice and then suddenly and unexpectedly aborting. Accordingly, an assessment of attorneys' fees is warranted, and Travelers is awarded $2,550, assessed jointly and severally against Sterling and Golub.

Co-defendant SGS Testing joins in Travelers' motion to dismiss. I do not reach the merits of its motion, for Sterling acknowledges that once Travelers is dismissed from this case, there is no longer a basis for maritime jurisdiction. Nor is there diversity jurisdiction, both Sterling and SGS being New York corporations. Thus, there being no basis for federal jurisdiction over SGS,

Sterling has consented to dismissal of this action against SGS, which is granted.

So ordered.

