Virginia GAMBALE, Plaintiff–
Appellee,

v.

DEUTSCHE BANK AG, Bankers Trust
Company, Defendants–Appellants.

Docket No. 03–7621.

United States Court of Appeals,
Second Circuit.

Argued: April 21, 2004.

Decided: Aug. 2, 2004.

Ronald M. Green, Epstein, Becker & Green, P.C., New York, NY, for Defendants–Appellants.

Debra L. Raskin, Vladeck, Waldman, Elias & Engelhard, PC, New York, NY, for Plaintiff–Appellee (did not participate).

Eugene R. Scheiman (Daniel J. Friedman, of counsel), Buchanan Ingersoll, Professional Corporation, New York, NY, Amicus Curiae.

Before: McLAUGHLIN, SACK, and SOTOMAYOR, Circuit Judges.

SACK, Circuit Judge:

By July 2, 2003, the parties to this action had settled the underlying dispute, which involved alleged sex discrimination by the defendants-appellants, Deutsche Bank AG and Bankers Trust Company (together, the "Bank"), against the plaintiff-appellant, Virginia Gambale. The parties had therefore entered into a settlement agreement in the United States District Court for the Southern District of New York reflecting the terms of the settlement. In it, they had agreed that the terms of the settlement would be maintained in confidence. They had also filed with the Clerk of Court a stipulation of dismissal pursuant to Fed. R.Civ.P. 41(a)(1)(ii).

On July 2, 2003, the district court (Harold Baer, Jr., *Judge*) publicly disclosed some of the settlement terms in the course of ordering, *sua sponte*, the unsealing of several sealed documents relating to the

action. The Bank appeals from the district court's order, asserting that after the stipulation of dismissal was filed, the court lacked jurisdiction to issue such an order. It also asserts that even if the court had jurisdiction, the order was improper. We conclude that the district court had jurisdiction to issue the order unsealing the documents and did not abuse its discretion in doing so. We remand the action to the court, however, with an instruction to maintain under seal the transcript of a conference in which the parties revealed to the court the confidential amount that the Bank was to pay Gambale in accordance with the confidential settlement agreement, unless all confidential information and direct and indirect references to confidential information are first redacted and no party has otherwise carried its burden of establishing that the document should be sealed in its entirety.

## BACKGROUND

On June 20, 2002, Virginia Gambale, a former Managing Director of the Bank, brought an action against the Bank in the United States District Court for the Southern District of New York. She alleged that the Bank had discriminated against her on the basis of her sex and had retaliated against her for complaining about it, in violation of the New York State and New York City Human Rights Laws. On October 24, 2002, during the initial discovery phase of the litigation, the parties executed and the district court "so ordered" a "Stipulation and Order Governing the Protection and Exchange of Confidential Material" (the "Stipulation of Confidentiality"). The Stipulation of Confidentiality permitted the parties to designate any produced documents, information, or deposition testimony as confidential if they thought that such material contained confidential or proprietary information. It also permitted a party producing material labeled as confidential to move for a protective order

before the opposing party filed the material.

During the course of discovery, the Bank produced documents, some of which it labeled confidential. Those documents included the compensation planning charts relating to two Bank employees, the compensation history of two Bank employees, and four pages of an internal Bank study of diversity at the Bank, which contained information about the gender composition of the Bank's employees. *Gambale v. Deutsche Bank AG*, No. 02 CIV. 4791 HB, 2003 WL 21511851, at *2, 2003 U.S. Dist. LEXIS 11180, at *4–*7 (S.D.N.Y. July 2, 2003). Gambale filed these documents as exhibits to her response in opposition to the Bank's motion for summary judgment.

On March 11, 2003, based on the Stipulation of Confidentiality, the Bank sought from Magistrate Judge Douglas F. Eaton a protective order requiring that those documents be sealed in the court files. The magistrate judge entered an order providing that "[u]ntil such time as Judge Baer rules on Defendants' request that the ... items be placed permanently under seal, Plaintiff will remove the ... documents from the opposition papers that she files with the [court] Clerk ... and ... will file such documents under seal with the Clerk." March 20, 2003, Stipulation and Order Pertaining to the Filing of Documents Under Seal, at 2. The order also provided:

> Upon resolution of the summary judgment motion by Judge Baer or the trial of the matter, whichever comes first, Defendants shall renew before Judge Baer the request set forth in their March 11, 2003 letter to Magistrate Judge Eaton. This Order shall remain in effect pending Judge Baer's issuing a ruling on Defendants' renewed request.

*Id.* at 3.

Gambale subsequently requested that Magistrate Judge Eaton order that the

entire diversity study be disclosed to her for purposes of discovery. The magistrate judge declined to order full disclosure, concluding that most of the study was privileged. Instead, he ordered the Bank to produce four additional pages of the study because those pages were not privileged. *See* April 8, 2003, Memorandum and Order. The Bank did not object to the order. As part of her opposition to the Bank's motion for summary judgment, Gambale filed with the district court the documents that the Bank had disclosed pursuant to the magistrate judge's order.

By order dated May 13, 2003, the district court granted the Bank's motion for summary judgment as to Gambale's claim regarding the allegedly discriminatory appointment of another Bank employee to head a particular steering committee. The court denied the motion for summary judgment on Gambale's many other claims.

According to the Bank, on May 23, 2003, the parties jointly advised the court that they had reached a settlement of the action in principle. The Bank asserts that the settlement was motivated significantly by its desire to avoid public disclosure at trial of the temporarily sealed documents. The Bank also asserts that the district court then advised the parties to appear before it four days later to present a stipulation of discontinuance pursuant to the settlement agreement. By May 27, 2003, the Bank says, the parties had executed a "Confidential Settlement and General Release Agreement" (the "Settlement Agreement"). According to the Bank, the Settlement Agreement contains (1) a non-admission of liability clause; (2) a confidentiality provision that covers the entire Settlement Agreement, including the amount that the Bank would pay to Gambale in settlement of her claims; and (3) a clause that provides that any documents filed under seal with the

district court shall remain permanently under seal.

On May 27, 2003, the parties appeared before the district court. They advised the court that the litigation had been settled on a confidential basis. They asked the court to retain jurisdiction over the action in order to permit it to appoint a special master to hear future disputes, if any, about settlement payments.

The district court then asked the parties to share with it the specific dollar amount of settlement "since at the moment it's all confidential." May 27, 2003, Transcript, at 2. The parties did so, with counsel for the Bank reiterating that he was disclosing it "[s]ince at the moment it's all confidential." *Id.*

The district court judge wondered aloud why the public should not know about discrimination at a major banking institution. A lawyer for one of the parties answered, first, that the Settlement Agreement contains no admission of liability and, second, that such a disclosure would deter settlement. The district court asked the parties to file letters with it addressing whether the settlement terms should be made public. The transcript of the conference was filed with the district court clerk's office under seal.

On May 29, 2003, the Bank submitted a letter in support of its position that the Settlement Agreement should be kept confidential. The Bank argued that both parties had agreed that the information would be maintained in confidence and that no public interest favored public disclosure.

According to the Bank, at a June 9, 2003, conference, the district court refused to adhere to the parties' agreement that the terms of the Settlement Agreement remain confidential. According to the Bank, the court declared that it would disclose the contents of the Settlement

Agreement unless the Bank agreed to conduct a global gender review through a third party during several subsequent years. Under the district court's proposal, the Bank would be required to bind itself to provide the results of the review to the court. The court would then either accept the report or reject it and require further affirmative steps to combat discrimination. The Bank refused to agree to these conditions.

Two days later, on June 11, 2003, the parties filed a Stipulation of Dismissal with Prejudice (the "Stipulation of Dismissal") pursuant to Fed.R.Civ.P. 41(a)(1)(ii). The Bank then sent the district court a letter asserting that, as a result of the Stipulation of Dismissal, the court no longer had jurisdiction over the action between Gambale and the Bank. In the Bank's view, the district court therefore had no authority to permit disclosure of the settlement terms or to unseal any documents related to the action or the settlement.

On June 13, 2003, the district court issued an order permitting the Bank to make a motion on or before June 23, 2003, to have Magistrate Judge Eaton's protective order made permanent. On June 20, 2003, the Bank wrote to the district court restating its position that, in light of the settlement between the parties and the stipulated dismissal, the district court no longer had jurisdiction to consider the status of the sealed documents.[1] The Bank set forth no argument on the merits as to why, if the district court did indeed retain jurisdiction, the settlement documents should be maintained under seal.

On July 2, 2003, the district court issued an opinion and order unsealing the sealed documents filed by Gambale in opposition to the Bank's motion for summary judgment (the "Unsealing Order"). *Gambale,* 2003 WL 21511851, at *4, 2003 U.S. Dist. LEXIS 11180, at *16–*17.[2] Shortly thereafter, the Unsealing Order became publicly available from the online databases of Westlaw and Lexis. Despite the Settlement Agreement's confidentiality provisions, the Unsealing Order explicitly referred to the magnitude of the amount the Bank paid Gambale in settlement. *See id.,* 2003 WL 21511851, at *1, 2003 U.S. Dist. LEXIS 11180, at *2 ("On the eve of trial, the parties agreed to a multi-million dollar settlement."). The court also disclosed, in general terms, the subjects of the sealed documents. *Id.,* 2003 WL 21511851, at *2, 2003 U.S. Dist. LEXIS 11180, at *4–*6. The court reasoned that despite the parties' settlement and Stipulation of Dismissal, the court retained jurisdiction over the documents filed in court in connection with the litigation and access to them. *Id.,* 2003 WL 21511851, at *3, 2003 U.S. Dist. LEXIS 11180, at *11–*13.

The court then turned to the merits. It concluded:

First, the sealed documents were judicial documents because the court relied on them in denying in part the Bank's motion for summary judgment. *Id.,* 2003 WL 21511851, at *1–*2, 2003 U.S. Dist. LEXIS 11180, at *4–*7 (detailing the relevance of each of these documents to its ruling on the Bank's summary judgment motion). As

---

1. In its letter, the Bank seemed to concede that the court would have jurisdiction to consider such a motion in the event that a third party moved to unseal the documents. We find it difficult to reconcile that concession with the Bank's position that the district court was without jurisdiction to decide whether the documents at issue should be unsealed.

2. Although we do not know whether the second set of four pages of the diversity study were previously filed under temporary seal, in its July 2, 2003, order, the district court temporarily sealed these pages until July 14, 2003. *See Gambale,* 2003 WL 21511851, at *2 n. 2, 2003 U.S. Dist. LEXIS 11180, at *6 n. 2.

judicial documents, they were entitled to the presumption of public access. *Id.,* 2003 WL 21511851, at \*3, 2003 U.S. Dist. LEXIS 11180, at \*10.

Second,

Although [the court had given the Bank] ample opportunity to demonstrate that [its] privacy interests overcame the presumption of access, [it had] provided the Court with nothing to meet [its] burden, perhaps under the erroneous hope that if [it] did not renew its motion to seal documents, the Court would have no power to *sua sponte* unseal the records. [The Bank is] incorrect.

*Id.,* 2003 WL 21511851, at \*4, 2003 U.S. Dist. LEXIS 11180, at \*14–\*15. The district court therefore ordered that the documents be unsealed. *Id.,* 2003 WL 21511851, at \*4–\*5, 2003 U.S. Dist. LEXIS 11180, at \*16–\*17.

The district court nonetheless ordered the Clerk of Court to maintain the documents under seal for nearly two weeks, until July 14, 2003, to provide the Bank with an opportunity to seek a stay from this Court or to resolve before this Court on the merits the propriety of the Unsealing Order. *Id.,* 2003 WL 21511851, at \*5, 2003 U.S. Dist. LEXIS 11180, at \*17.

On July 8, 2003, the Bank made a motion in this Court for a stay of the Unsealing Order, for an order prohibiting the district court from taking any further action in the case, and for an order blocking any further release of the Unsealing Order that would reveal details of the settlement or the documents at issue. A day later, on July 9, 2003, we temporarily stayed the Unsealing Order until a motions panel of the Court could hear and decide the Bank's motion. On August 28, 2003, a motions panel granted the Bank's motion for a stay but denied the Bank's motion to seal the district court's by-then published Unsealing Order.

Because Gambale, her settlement in hand, did not take a position with respect to public access to the documents at issue, the motions panel, *sua sponte,* appointed *pro bono* counsel to brief and argue as *amicus curiae* the issue of public disclosure.[3] We now address the merits of the Bank's appeal with respect to the unsealing of the documents addressed in the Unsealing Order, the sealing of the transcript containing the settlement amount, and the district court's disclosure of the settlement amount's magnitude in the Unsealing Order.

## DISCUSSION

### I. Contentions of the Parties

The Bank contends that the district court had no jurisdiction to issue the Unsealing Order after the parties had filed the Stipulation of Dismissal, thereby dismissing the case under the terms of Fed. R.Civ.P. 41(a)(1)(ii). Even if the court had jurisdiction, the Bank maintains, the unsealing of the sealed documents was improper, as was the court's disclosure of the magnitude of the settlement amount in the Unsealing Order. The Bank argues primarily that the district court erred in unsealing the documents because (1) there is no presumption of access to the sealed documents because they are not judicial documents, and (2) even if they are judicial documents, ordering them unsealed was an abuse of the court's discretion.

*Pro bono* counsel asserts to the contrary that the district court had jurisdiction to issue the Unsealing Order because a court

---

**3.** The Court expresses its thanks to *pro bono* counsel for his dedicated and highly professional assistance.

always has the power to modify protective orders relating to documents in its files. Counsel maintains that the district court, asserting that jurisdiction, did not abuse its discretion in unsealing the documents because the Bank, having relied on its position with respect to the district court's absence of jurisdiction, did not advance any interests to overcome the presumption of public access to the judicial documents at issue. And, counsel argues, even if we were to consider the interests that the Bank declined to assert, the district court did not abuse its discretion in entering the order to unseal. As for the court's disclosure of the magnitude of the settlement amount in the Unsealing Order, counsel asserts that the motions panel of this court had already decided not to order sealed the by-then public order. Finally, with respect to the sealed transcript of the May 27, 2003, conference, counsel, who was of course not present during the course of those proceedings, concedes that he does not know why the transcript was or remains sealed or why the court did not rule on the continued sealing of the transcript in the Unsealing Order.

## II. Standard of Review

■ We review *de novo* a district court's legal determination that it has subject matter jurisdiction over a matter brought before it or upon which it acts. *See Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 701 (2d Cir.2000). We review a district court's decision to vacate or modify a protective order for abuse of discretion. *SEC v. TheStreet.com,* 273 F.3d 222, 228 (2d Cir.2001).

## III. Jurisdiction To Unseal Documents

The parties filed a stipulation of dismissal in the district court pursuant to Fed. R.Civ.P. 41(a)(1)(ii). Rule 41 provides:

Subject to the provisions of [rules inapplicable here] and of any statute of the United States, an action may be dismissed by the plaintiff without order of court ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

Fed.R.Civ.P. 41(a)(1)(ii).

■ Generally, as the Bank suggests, a plaintiff's filing in the district court of a stipulation of dismissal signed by all parties pursuant to Rule 41(a)(1)(ii) divests the court of its jurisdiction over a case, irrespective of whether the district court approves the stipulation. *See Hester Indus., Inc. v. Tyson Foods, Inc.,* 160 F.3d 911, 916 (2d Cir.1998) (holding that a case is dismissed when the parties file a stipulation of dismissal pursuant to Rule 41(a)(1)(ii)), *cert. denied,* 526 U.S. 1131, 119 S.Ct. ·1805, 143 L.Ed.2d 1009 (1999); *accord Marques v. Fed. Reserve Bank,* 286 F.3d 1014, 1018 (7th Cir.2002) ("[A] judgment on the merits that is entered after the plaintiff has filed a proper Rule 41(a)(1) notice of dismissal is indeed void."); *Meinecke v. H & R Block,* 66 F.3d 77, 82 (5th Cir.1995) (per curiam) (holding that the district court's grant of summary judgment to a party after the parties filed a stipulation pursuant to Rule 41(a)(1)(ii) was void); *Hinsdale v. Farmers Nat'l Bank & Trust Co.,* 823 F.2d 993, 995–96 (6th Cir.1987) (holding that a dismissal pursuant to Rule 41(a)(1)(ii) "terminated the district court's jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b) of the Federal Rules of Civil Procedure" (citation and internal quotation marks omitted)).

It simply does not follow, however, that the filing of a stipulation of dismissal divests a court of jurisdiction either to dispose of material in its files as it thinks appropriate or to modify or vacate its own

protective orders with respect to such documents.

 The public has a common law presumptive right of access to judicial documents, *see United States v. Amodeo*, 44 F.3d 141, 145–46 (2d Cir.1995) ("*Amodeo I*"), and likely a constitutional one as well.[4] As to the former, we have said:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system. . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995) ("*Amodeo II*") (ellipsis in original) (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir.1993) (quoting *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir.1991) (citation omitted))). We have observed that, consistent with this rationale for public access,

the presumptive right to "public observation" is at its apogee when asserted with respect to documents relating to "matters that directly affect an adjudication." *Id.* at 1049. Such documents include those relating to the decision of a motion for summary judgment, such as the grant and denial of partial summary judgment by the district court here. *See Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). In part because they relate to a court's adjudication process, "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Id.* Although parties to litigation may thus overcome the presumption of access by supplying "most compelling reasons," they cannot expunge the public interest by the simple expedient of filing a stipulation of dismissal with the court. The public's stake in the propriety and particulars of the court's adjudication does not evaporate upon the parties' subsequent decision to settle.

 It is, moreover, fundamental that "[e]very court has supervisory power over its own records and files." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589,

---

**4.** *See, e.g., Hartford Courant Co. v. Pellegrino*, 371 F.3d 49, 57 (2d Cir.2004) ("[T]he media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings."); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir.1997) ("A number of circuits have concluded that the logic of [*Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 7–9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (establishing a First Amendment right of access to preliminary hearings in state criminal cases)] extends to at least some categories of court documents and records, such that the First Amendment balancing test there articulated should be applied before such qualifying documents and records can be sealed." (citations omitted)), *cert. denied*, 522 U.S. 1142, 118 S.Ct. 1110, 140

L.Ed.2d 163 (1998); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir.1991) ("[T]he First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings."); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir.1983) (implying a First Amendment right of access to court documents), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); *cf. Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir.1984) (acknowledging a First Amendment right of public access to civil proceedings), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3478, 87 L.Ed.2d 614 (1985). Because a First Amendment right of access has not been asserted by any party, *amicus*, or the district court, we do not address the issue.

598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *United States v. Graham*, 257 F.3d 143, 152 (2d Cir.2001) (quoting *Nixon* ). "It is undisputed that a district court retains the power to modify or lift protective orders that it has entered." *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir.), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). The First Circuit has observed that

> [A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment.

> This retained power in the court to alter its own ongoing directives provides a safety valve for public interest concerns, changed circumstances or any other basis that may reasonably be offered for later adjustment.

*Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993) (citation omitted). The court's supervisory power does not disappear because jurisdiction over the relevant controversy has been lost. The records and files are not in limbo. So long as they remain under the aegis of the court, they are superintended by the judges who have dominion over the court. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990), *cert. denied*, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed.").

As we have held and as the Bank concedes, a district court can modify a protective order when a third party requests judicial documents after the parties have filed a stipulation of dismissal pursuant to settlement. *See Agent Orange*, 821 F.2d at 143–45.[5] We have never ruled on the district court's jurisdiction, to which the Bank pointedly objects, to modify a protective order *sua sponte* after the parties have filed a stipulation of dismissal. But we see no reason why the absence of a motion of a party to the litigation or some third party requesting that a seal or protective order be lifted should remove a federal court's ability to monitor and modify its previous orders in exercise of its "supervisory power over its own records and files." *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306; *see Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 307 (2d Cir.1997) (requiring, *sua sponte*, that the district court review records filed wholesale under seal to determine whether their confidential treatment was warranted, without considering whether there was a person or entity that had a specific interest in gaining access to them or maintaining them in the public files of the court); *cf. Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir.1999) ("The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)."); *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F.Supp.2d 1353, 1363 (N.D.Ga.2002) ("[T]he existence of public

---

**5.** *Agent Orange* allowed the district court to modify a protective order post-settlement when third parties intervened in the action in an attempt to access documents under a protective order issued by the district court. *See Agent Orange*, 821 F.2d at 143–45. The settlement in *Agent Orange* was subject to the approval of the district court because the case was a class action. The district court "tenta-

tively approv[ed]" the settlement before hearing argument on the intervenors' motion. *Id.* at 143. Although the parties to *Agent Orange* had not filed a stipulation of dismissal, as the parties to this case did, we think that the rule set out in *Agent Orange* is broad and applies equally to a case in which a third party requests judicial documents after the parties have filed a stipulation of dismissal.

scrutiny or active media interest in a case does not control whether [a protective order] is warranted.").

A district court that concludes that there is a public right of access to judicial documents thus acts within its jurisdiction when it modifies or vacates a protective order to allow that access, irrespective of whether it does so before or after a stipulation of dismissal has been filed. We therefore conclude that the district court here acted within its jurisdiction when it issued the Unsealing Order even though the order followed the parties' filing of the Stipulation of Dismissal.

## IV. Unsealing of Documents [6]

### A. Summary Judgment Documents

Fed.R.Civ.P. 26(c) permits a district court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing by a movant for the order of good cause. "[T]he party seeking a protective order has the burden of showing that good cause

exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *Agent Orange*, 821 F.2d at 145.

Here, the Bank relied in the district court entirely on its position, with which, as we have explained, we disagree, that the district court had no jurisdiction to modify the protective order and thereby unseal the summary judgment documents. As we have noted, these documents, which related to the court's ruling on a motion for summary judgment, were presumptively subject to public access.[7] The Bank made no effort to rebut that presumption by establishing that there was a continuing compelling reason to require that the documents remain under seal. No such showing having been attempted, let alone made, the district court was well within its discretion to order that the seal on the documents be lifted.

---

**6.** We note as a preliminary matter that the district court was not asked to, and did not, "approve" or otherwise act with respect to the Settlement Agreement. It is therefore difficult to see how the confidentiality clause in the Settlement Agreement can bind the district court. *Cf. City of Hartford v. Chase*, 942 F.2d 130, 132 (2d Cir.1991) (describing the district court's filing of an order adopting the parties' stipulated settlement and including a confidentiality order when, "[a]fter arriving at a conditional settlement, the parties informed the court that final resolution of the dispute was conditioned upon the court's entry of an order assuring that the contents of the settlement would remain confidential"); *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D.Nev. 1993) ("With respect to contracts containing explicit guarantees of confidentiality, such contracts, of course, cannot bind parties who do not sign them ...." (citation and internal quotation marks omitted)).

**7.** In *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir.1979),

this Court established a strong presumption against access to sealed documents when there was reasonable reliance on a previously granted protective order, absent extraordinary circumstances or a compelling need, *see id.* at 296–97; *accord TheStreet.com*, 273 F.3d at 229. However, "some protective orders may not merit a strong presumption against modification. For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties. Indeed, in such circumstances reliance may be unreasonable." *Id.* at 230–31. If reliance would be unreasonable, it is within the discretion of the court to vacate or modify a protective order. *Id.* at 231. In the instant case, contrary to the Bank's argument, the Bank could not have reasonably relied on the seal ordered by Magistrate Judge Eaton in his March 20, 2003, order because it was explicitly temporary. Therefore, there is no presumption against access.

*B. The Amount of the Settlement: The Published Unsealing Order and the May 27, 2003, Transcript*

 The amount paid by the Bank to Gambale in connection with the settlement of her lawsuit stands on starkly different footing. That amount is set forth in settlement documents that were entered into on a confidential basis between the parties and are not themselves part of the court record. There is no established presumption of access of which we have been made aware with respect to the information contained in them. *Cf. United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 857 (2d Cir.1998) (holding that there is no presumptive right of access to settlement discussions and documents); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 781 (3d Cir.1994) (concluding that when a settlement agreement is not filed with, interpreted by, or enforced by a court, it is not a judicial record presumed to be accessible); *SEC v. Van Waeyenberghe,* 990 F.2d 845, 849 (5th Cir.1993) ("Once a settlement is filed in district court, it becomes a judicial record. The presumption in favor of the public's common law right of access to court records therefore applies to settlement agreements that are filed and submitted to the district court for approval." (citation omitted)). We cannot and do not conclude that there can never be a circumstance or a showing that would require such disclosure. At the same time, however, there may well be valid reasons in this and other cases terminated by settlement for maintaining the amount of settlement in confidence when the settlement itself was conditioned on confidentiality and when the settlement documents were not

filed with the court and were not the basis for the court's adjudication. If nothing else, honoring the parties' express wish for confidentiality may facilitate settlement, which courts are bound to encourage. *See Glens Falls Newspapers, Inc.,* 160 F.3d at 857 (approving the sealing of settlement documents and drafts because of, *inter alia,* the court's responsibility to encourage and facilitate settlements).

The confidential settlement amount was disclosed to the court at a conference with counsel for the parties. At the conference, the district court insisted on learning the settlement amount without making a determination whether public disclosure of the amount was required. The Bank, based on what it may have thought were assurances of confidentiality, complied.

Of course, the statements at the conference, including the settlement amount, having been reduced to transcript form and filed, were part of a judicial record to which some presumption of openness, however gauged, may have therefore attached. *See Amodeo I,* 44 F.3d at 145 (describing judicial documents as those that are "relevant to the performance of the judicial function and useful in the judicial process"). We think, however, that the presumption, such as it was, was a weak one under these circumstances: The amount of the settlement was confidential, the parties articulated the reasons for such confidentiality, and the amount made its way into the transcript only in response to the court's apparently casual questioning of counsel in the course of proceedings addressing the settlement, not the adjudication, of litigation.[8] Without some further

---

8. There is thus a troubling element of bootstrapping about the presumption of access here: It arises out of the transcription of a relatively informal conference relating to settlement (not adjudication of the dispute on

the merits), the court's rather off-hand request for confidential information during the course of the hearing, and the subsequent filing of the transcript of the hearing with the Clerk of Court. While we emphatically attrib-

showing of public interest in the disclosure of the settlement amount, the Bank's reasons for maintaining the confidentiality easily overcome the markedly weak presumption of access here.[9] We think that it would therefore be an abuse of discretion for the court to unseal the May 23, 2003, transcript, unless all confidential information (including references, direct and indirect, to confidential information) is redacted from it and no party has otherwise carried its burden of establishing that the document should be sealed in its entirety. We remand the case to the district court for it to order the transcript, under these conditions, to remain under seal.

■ For the same reasons, we think that it was a serious abuse of discretion for the district court to refer to the magnitude of the settlement amount—theretofore confidential—in the Unsealing Order. But

however confidential it may have been beforehand, subsequent to publication it was confidential no longer. It now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere.[10] We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. *Cf. SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F.Supp.2d 1002, 1008 (N.D.Ill.2003) (Posner, J., sitting by designation) (deciding that a motion to seal portions of an agreement containing confidential information would not be granted as to redacted aspects of the agreement already disclosed in the court's opinion). The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.[11]

ute no improper motivation whatsoever to the district court, the result was to transmute arguably legitimately confidential data to a document to which the public has a presumptive right of access. *Cf. Martindell v. Int'l Telephone & Telegraph Corp.*, 594 F.2d 291, 296–97 (2d Cir.1979) (establishing a strong presumption against access to sealed documents when there was reasonable reliance on a previously granted protective order, absent extraordinary circumstances or a compelling need).

9. In contrast to its decision to argue solely that the district court had no jurisdiction to unseal the summary judgment documents, the Bank attempted to rebut any presumption of access to the settlement terms, which include the settlement amount. It argued that they should not be made public because the Settlement Agreement—a private contractual arrangement permitted and encouraged by law—was confidential, the Bank did not admit any wrongdoing or agree to change its existing policies, and the settlement provides an economic benefit only to Gambale.

10. *See, e.g.*, Patrick McGeehan, *Discrimination on Wall St.? The Numbers Tell The Story*, N.Y. Times, July 14, 2004, at C1 ("In another case, Deutsche Bank settled a discrimination

complaint from a managing director, Virginia Gambale, on the eve of a trial last year. Ms. Gambale, who had said that she was twice denied promotions because of her sex, received a 'multimillion-dollar settlement,' according to Judge Harold Baer Jr. of Federal District Court in Manhattan . . . .").

11. This is generally so when information that is supposed to be confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb, *see United States v. Progressive, Inc.*, 467 F.Supp. 990, *reh'g denied*, 486 F.Supp. 5 (W.D.Wis.), *appeal dismissed*, 610 F.2d 819 (7th Cir.1979)—is publicly disclosed. Once it is public, it necessarily remains public. As Judge Richard Owen, of the United States District Court for the Southern District of New York, once aptly reminded the author of this opinion while he was acting as counsel for a party at trial: "Once the cat is out of the bag, the ball game is over." *Calabrian Co. v. Bangkok Bank Ltd.*, 55 F.R.D. 82 (S.D.N.Y. 1972) (addressing the use at trial of privileged documents when the privileged nature of the documents, which had not been maintained in confidence, was first asserted during the relevant witness's cross-examination in open court); *see also* Melville B. Nimmer, *The*

## CONCLUSION

For the foregoing reasons, we affirm the district court's order but remand the case to the district court with instructions for it to seal permanently the transcript of the May 27, 2003, conference unless and until all confidential information, including references, direct and indirect, to confidential information, is first redacted from it and no party has otherwise carried its burden of establishing that the document should be sealed in its entirety.

*Right To Speak From Times to Time: First Amendment Theory Applied to Libel and Misapplied to Privacy*, 56 Cal. L.Rev. 935, 961 (1968) (positing that communications that invade personal privacy, unlike false defamatory speech, are by definition true and therefore, once revealed, are indelible; they cannot be cured by "more speech").

In an exceptional recent case, *In re People v. Bryant*, No. 04SA200, 94 P.3d 624, 2004 WL 1613774, 2004 Colo. LEXIS 557 (Colo. July 19, 2004) (en banc), however, the Supreme Court of Colorado did uphold an injunction against media dissemination of material released to them by accident that related to the alleged victim in a high-profile rape prosecution. *Id.*, 94 P.3d at 638, 2004 WL 1613774, at *15, 2004 Colo. LEXIS 557, at

*46–*48. It did so despite Justice Bender's observation in dissent that

[I]t seems undeniable to me that the damage to the alleged victim's privacy interests has already been done in this case. The majority, through its sanction of the order not to publish, seeks to protect the alleged victim from embarrassing revelations about her private sexual conduct, but that cat is out of the bag. Through court filings and interviews with the alleged victim's associates, the media have reported on topics related to the evidence considered at the rape shield hearing and the purposes for which the defense seeks to admit that evidence.

dissenting) (citation and internal quotation marks omitted).